550 A.2d 825

Barnet Roetenberg, Petitioner *v.* Commonwealth of Pennsylvania, Office of Budget, Respondent.

John S. Woelfl, Petitioner *v.* Commonwealth of Pennsylvania, Office of Budget, Respondent.

Commonwealth of Pennsylvania, Office of the Budget, Petitioner *v.* John S. Woelfl, Respondent.

Commonwealth of Pennsylvania, Office of the Budget, Petitioner *v.* Barnet Roetenberg, Respondent.

Argued September 16, 1988, before Judges DOYLE and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

*Edgar R. Casper, Gross, Casper & Feld,* for petitioners, Barnet Roetenberg and John S. Woelfl.

*Frank A. Fisher, Jr.,* Acting Chief Counsel, with him, *Arlene F. Klinedinst,* for respondent, Office of the Budget.

*Debra K. Wallet, Blank and Wallet,* for intervenor, William Braucher.

OPINION BY JUDGE DOYLE, November 14, 1988:

Before us for our consideration are cross-appeals filed by the Commonwealth of Pennsylvania, Office of the Budget (OB) and by Barnet Roetenberg (Roetenberg) and John S. Woelfl (Woelfl), each as an individual, from two separate orders of the State Civil Service Commission (Commission). The Commission issued the two orders in question and the accompanying adjudications on remand in response to our Court's opinion and order in *Roetenberg v. Office of Budget,* 97 Pa. Commonwealth Ct. 316, 509 A.2d 910 (1986), *(Roetenberg I)* which remanded the two cases for further proceedings. Also before us are (1) an application for intervention filed on behalf of William F. Braucher and (2) a motion for court action on Braucher's application for intervention.

This case is a procedural thicket. It also involves certain questions of first impression concerning the Civil Service Act, Act of August 5, 1941, P.L. 752, *as amended,* 71 P.S. §§741.1—741.1005,· and the Act of

December 13, 1982, P.L. 1127, *as amended*, 71 P.S. §§2031—2035 (Costs Act). We shall endeavor to dispose of the numerous problems which confront us in an organized manner beginning first with a somewhat lengthy, but in our view necessary, recitation of the facts and procedural history.

The genesis of this matter can be traced back to June 1983 at which time Roetenberg, Woelfl and Braucher along with one other individual (Wightman, whose situation is not particularly relevant herein) were notified that they would be furloughed from their Accounting Executive I positions within the Comptroller's Office in OB effective July 29, 1983.[1] The furloughees were offered Accountant III positions (*i.e.*, demotions in lieu of furloughs). Roetenberg and Braucher accepted the positions. Woelfl did not and was furloughed. Both Roetenberg and Woelfl, however, in mid-July 1983, filed individual appeals with the Commission challenging the propriety of their furloughs.[2] Subsequent to the filing of the appeals, but before the Commission held its hearing, (on July 20, 1984) certain other personnel actions occurred within OB which are of critical significance for an understanding of this case.

Effective August 2, 1983, just two business days after the furlough became effective, OB reassigned two of the remaining seventeen Accounting Executive Is within the comptroller's office (Higgins and Deemer). One was reassigned to the Bureau of Financial Management

---

[1] OB, in the context of a reorganization, had determined that it needed only seventeen Accounting Executive Is. It had twenty-two. One individual transferred before the reorganization and four (Roetenberg, Woelfl, Braucher and Wightman) were furloughed.

[2] One may accept a demotion in lieu of furlough and still challenge the underlying furlough action. *Pavia v. Department of Transportation*, 47 Pa. Commonwealth Ct. 399, 408 A.2d 206 (1979).

and the other to the Bureau of Operations Review. This left fifteen Accounting Executive Is within the comptroller's office at OB. OB then reassigned two other individuals, Herr and Wineholt, to Accounting Executive I positions within the comptroller's office again bringing the total to the desired seventeen. *See supra* n.1. Although all of this evidence was before the Commission in its original hearing, the majority opinion did not make any findings on the propriety of these various reassignments as they impacted upon furlough recall rights. However, then Commission Chairman Mary D. Barnes, in her dissenting opinion did make such findings and opined that the reassignments of Herr and Wineholt into the Accounting Executive I positions, which reassignments occurred subsequent to the furloughs in question, were improper in that they, *inter alia,* violated the recall rights of the furloughees as set forth in Section 802 of the Civil Service Act, 71 P.S. §741.802. That Section states:

> In case a reduction in force is necessary in the classified service, no employe shall be furloughed while any probationary or provisional employe is employed in the same class in the same department or agency, and no probationary employe shall be furloughed while a provisional employe is employed in the same class in the same department or agency. An employe shall be furloughed only if at the time he is furloughed, he is within the lowest quarter among all employes of the employer in the same class on the basis of their last regular service ratings, and within this quarter he shall be furloughed in the order of seniority unless there is in existence a labor agreement covering the employes to be furloughed, in which case the terms of such labor agreement relative to a furlough procedure

shall be controlling: Provided, That the appointing authority may limit the application of this provision in any particular instance to employes in the same class, classification series or other grouping of employes as referred to in any applicable labor agreement, and which are in the same department or agency with headquarters at a particular municipality, county or administrative district of the Commonwealth.

A furloughed employe shall have the right of return to any class and civil service status which he previously held, provided such class is contained in the current classification plan of the agency; or to any class and civil service status in the same or lower grade, provided that he meets the minimum qualifications given in the classification plan of the agency. The appointing authority shall promptly report to the director the names of employes furloughed, together with the date the furlough of each is effective and the character of his services. Under the rules a regular employe furloughed shall for a period of one year be given preference for reemployment in the same class of position from which he was furloughed and shall be eligible for appointment to a position of a similar class in other agencies under this act unless the terms of an existing labor agreement preclude the employe from receiving the preferential treatment contained in this section in which event the terms of the labor agreement shall be controlling, provided that in case of a promotion of another employe such preference shall not be effective if it necessitates furloughing such other employe unless the terms of an existing labor agreement require

that such preferential treatment shall be given to the furloughed employe.

The Commission dismissed Roetenberg's and Woelfl's appeals. Roetenberg and Woelfl then appealed to this Court. In *Roetenberg I* we determined that the Commission erred "in not considering the effect of Section 802 on [Roetenberg's and Woelfl's] appeals. . . ." 97 Pa. Commonwealth Ct. at 319, 509 A.2d at 911. We further stated, "[t]he Commission, since it failed to consider Section 802, made no findings as to whether either or both [Roetenberg and Woelfl] were entitled to the rehiring preferences of Section 802 or if one or both of the other two individuals should have been rehired." *Id.* at 319, 509 A.2d at 912. Accordingly, we remanded to the Commission to make findings on this issue. Unfortunately, our language in *Roetenberg I* was not as precise as it might have been[3] and seems to have created some slight additional confusion.

Upon remand two problems arose. First, the parties disagreed as to whether our Court, in addressing the recall issue, had determined as a matter of law (1) that two individuals' recall rights had been violated and the Commission was only to determine *which* two individuals, or (2) that the Commission was to decide whether any recall rights had been violated at all. As to the second problem, on remand, it was agreed by the parties that the priority of recall, if in fact recall was warranted, should have been 1—Braucher, 2—Roetenberg, 3—Woelfl, and 4—Wightman. Counsel for Roetenberg and Woelfl believed that Braucher, who had not been a party to the action, should be notified that his rights may have been affected by *Roetenberg I* and could be affected by any decision the Commission would make as the

---

[3] Section 802 deals with both initial furlough rights and recall rights. The Commission's first adjudications did address Roetenberg's and Woelfl's furlough rights.

result of the remand. He endeavored to persuade the Commission to notify Braucher of his possible interest in the litigation. The Commission, however, believed that because Braucher and Wightman had not asserted any claim before the Commission concerning their furlough or recall rights, they could not be granted a right to participate actively in the proceedings. Counsel for Roetenberg and Woelfl then, much to his credit, took it upon himself to advise Braucher of this Court's opinion in *Roetenberg I* and further advised Braucher to secure legal counsel. Braucher also (whether with or without counsel is unclear to this Court) executed a release of certain of his rights.[4] All of this occurred before the Commission conducted its remand hearing.

---

[4]                    RELEASE

WHEREAS, I, William Braucher, have read the Opinion of the Commonwealth Court of Pennsylvania, by Judge MacPhail, filed May 19, 1986, in the cases of *Barnet Roetenberg v. Commonwealth of Pennsylvania, Office of Budget*, No. 652 CD 1985 and *John S. Woelfl v. Commonwealth of Pennsylvania, Office of Budget*, No. 653 CD 1985 [*Roetenberg I*]; and

WHEREAS, I was furloughed by the Office of Budget from a position of Accounting Executive I, effective July 29, 1983, in a furlough action in which Barnet Roetenberg, John S. Woelfl and Glenn C. Wightman were also furloughed from positions of Accounting Executive I; and

WHEREAS, I have been advised and fully understand that, pursuant to the aforesaid Commonwealth Court Opinion and remand of the case to the Civil Service Commission, I may be entitled to reinstatement with back pay for violation of re-employment rights; and,

WHEREAS, Nevertheless, I am willing to waive any rights or claims I may have, with respect to back pay, on the conditions described below;

NOW, THEREFORE, on condition that Barnet Roetenberg and John S. Woelfl are granted retroactive reinstatement to positions of Accounting Executive I for purposes of back pay, and that I am granted reinstatement to an Accounting Executive I position for purposes of prospective re-employment, I, William Braucher, in-

At the remand hearing, additional evidence was presented and argument was heard on the scope of the remand order. The Commission determined that it was empowered to review whether any recall rights had been violated and, if so, whose. It then determined that two vacancies were, in fact, created when Deemer and Higgins were reassigned and that OB's attempt to place Herr and Wineholt into those positions violated the furloughees' recall rights. It further decided that the proper order of recall would have been Braucher, Roetenberg, Woelfl, Wightman. The Commission thus ordered OB to "redo the challenged furlough/reassignments and take into account the furlough recall rights properly due the affected individuals."

The Commission also reasoned that although Braucher had the right to be recalled first, because he did not appeal either his furlough or his re-employment rights to the Commission, "his rights are not enforceable at this time." It thus concluded, "Braucher's rights are prospective only and would become effective only upon [OB's] proffer of recall pursuant to this adjudication and order." The Commission further opined that because Braucher's rights were prospective only the release he executed waiving certain of his rights was irrelevant. Additionally, the Commission determined that because Woelfl was third on the recall list he had a limited right of recall contingent upon the actions of Roetenberg (who asserted his rights in the companion

tending to be legally bound hereby, release and discharge the Commonwealth of Pennsylvania, Office of Budget, of and from all causes of action, claims and demands, for back pay, with respect to any violation of my re-employment rights in August 1983, under the Civil Service Act, any regulations promulgated thereunder and otherwise, in law or equity.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this 23rd day of July, 1987.

case) and Braucher. The Commission found that Braucher did file an appeal on July 24, 1987, and had asserted his recall rights "at least prospectively." Thus, with respect to Woelfl only, the Commission concluded that his recall rights were "too speculative for a definitive award of reinstatement or backpay." Accordingly, in summary, it ordered OB to offer one of the two positions to Braucher and directed that if he declined recall, Woelfl was to be recalled. With respect to Roetenberg, who occupied the number two position on the recall list and whose appeal was being decided concurrently with Woelfl's, reinstatement was ordered outright. Subsequent to the Commission's entry of its orders upon remand the instant cross-appeals followed.

Woelfl now contends that the Commission erred in ordering that Braucher, who had not initially appealed, be given the opportunity to accept recall. Alternatively, he and Roetenberg contend that this Court should now consider the initial furlough challenges raised on appeal in *Roetenberg I* but not expressly ruled upon by our Court because of the remand. Additionally, counsel fees are sought with respect to both Roetenberg and Woelfl under the *Costs Act*. The Commission declined to award such costs.

OB agrees that Braucher, because he had not appealed, deserves no remedy. OB argues in addition that Woelfl would have had no right to reinstatement because he was number three on the recall list and that he cannot gain such rights through Braucher's inaction. It also argues that the Commission committed legal error in concluding that the reassignments of Deemer and Higgins created "vacancies" which were subject to the recall provision of Section 802. OB further contends that this Court should not now consider the challenges to the underlying furloughs and that if Roetenberg and Woelfl were dissatisfied with the disposition of that issue in

*Roetenberg I* they should have appealed this Court's prior order or petitioned us for reconsideration. Finally, OB maintains that the Costs Act is inapplicable to this situation and, alternatively, that the Commission did not abuse its discretion in denying costs.

Braucher, who technically has no status in this Court, seeks leave to intervene. It is undisputed that he was not a party below. On the merits he asserts that the Commission acted properly in conferring rights upon him and that while he was not a party below, the Commission could, nonetheless, take the actions it did without his involvement pursuant to Sections 203 and 951(d) of the Civil Service Act, 71 P.S. §741.203, 741.951(d).[5] Due to administrative error in this Court Braucher's petition to intervene was incorrectly treated as a *notice* of intervention under Pa. R.A.P. 1531(a) rather than an application to intervene by allowance under Pa. R.A.P. 1531(b). A *notice* of intervention allows a *party* to intervene as of right within thirty days of the filing of the

---

[5] Section 203 reads as follows:

It shall be the duty of the members of the commission as a body—

. . .

(3) To make investigations on its own motion and, in its discretion, on petition of a citizen concerning any matter touching the enforcement and effect of the provisions of this act and to require observance of the provisions of this act and the rules and regulations thereunder.

Section 951(d) provides:

Notwithstanding any other provisions of this section, the commission may, upon its own motion, investigate any personnel action taken pursuant to this act and, in its discretion, hold public hearings, record its findings and conclusions, and make such orders as it deems appropriate to assure observance of the provisions of this act and the rules and regulations thereunder.

Section 951 was added to the Civil Service Act by Section 27 of the Act of August 27, 1963, P.L. 1275.

petition for review. Braucher, however, correctly stated in his application that he sought relief under Pa. R. A. P. 1531(b) (pertaining to non-parties). When an application is sought under 1531(a) no order of this Court is necessary provided that the application is filed within thirty days of the time the petition for review is filed. When, however, relief is sought under Section 1531(b) as it was here, an order of this Court is required. When Braucher's application was not acted upon, his counsel filed a motion for action on the application for intervention. Again, inexplicably, this Court did not enter an order in response to that motion. We now address this problem and deny the application to intervene.[6] We do so because, as will become evident from the discussion to follow, Braucher's interests are and will be adequately protected without the necessity of his intervention.

Before we begin our analysis of the various legal issues, we feel obligated to explain what our prior order directed. Although the focus of our opinion was on directing the Commission to determine whose rights were violated, our remand order and the discussion in our opinion were broad enough to permit the Commission to determine whether any recall rights had, in fact, been violated. As we noted in our opinion, the Commission had failed to make any findings on the recall issue and we, of course, were not empowered to do so. *See West Chester State College v. Stein,* 72 Pa. Commonwealth Ct. 561, 457 A.2d 176 (1983). The Commission acted properly in considering on remand both the propriety of any recall as well as what individuals should have been recalled.

Having resolved this question, it is now apparent that the question of whether any vacancies existed

---

[6] This renders the motion for action moot and we dismiss it on this basis.

which would trigger recall rights was properly before the Commission upon remand and, hence, is now properly before us on appeal. Thus, we proceed to a consideration of OB's allegation that the Commission committed legal error in determining that two vacancies did exist when Higgins and Deemer were reassigned out of the furlough unit.[7]

Section 802 of the Civil Service Act does not use the term "vacancy." The OB, however, relies upon Commission Regulation 101.1(e), 4 Pa. Code §101.1(e), and Management Directive 580.20. Regulation 101.1(e) provides as follows:

> *Mandatory reemployment.* Furloughed employes who are unable to exercise their right of return will be given a mandatory 1-year preference for reemployment in the same class and appointing authority from which furloughed. The preference shall not apply to vacancies to which employes on leave of absence have priority of return, or to a filled position which has been reallocated upward after the effective date of furlough.

OB does not contend that Deemer and Higgins were reclassified upward, *see* 4 Pa. Code §99.41, or that they were on leave of absence. Rather OB asserts that these two employees were *reassigned*.[8] We can see nothing in

---

[7] Our scope of review is limited to determining whether there has been a constitutional violation or an error of law and whether the Commission's necessary findings are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704.

[8] Reassignment is defined by the Commission as "[t]he movement of an employe from one position in a class to another position in the same class or in a different class with the same maximum pay level." 4 Pa. Code §91.3. Further, reassignment constitutes a move within the same appointing authority as distinguished from a transfer which involves a move to a different appointing authority. *See* 4 Pa. Code §99.21.

Regulation 101.1(e) which would lead one to conclude, as OB does, that the reassignments here did not create vacancies. Further, Management Directive 580.20 is not helpful to OB's position either as it merely states that reemployment or recall is conditioned upon a vacancy existing.[9] It certainly does not state or even imply that a reassignment does not create a vacancy. The notion that Deemer and Higgins left no vacancies is one which this Court, quite frankly, finds difficult to fathom. Our reaction, however is apparently not unique as the Commission, which is certainly the acknowledged expert in technical matters within its jurisdiction, was equally unimpressed by this argument as is evidenced by the following language in its adjudication upon remand:

> [I]t strains both logic and credibility to believe that Higgins and Deemer 'carried their positions on their backs' as it were. By definition, the functions of the offices to which they went were different from those performed by the Comptroller [sic] Office. Higgins and Deemer were among the original group of AE 1s who functioned as Assistant Comptrollers. AA Ex. 7. Subsequent to their 'reassignment', they were to function as AE 1s within the Bureau of Financial Management and the Bureau of Operations Review, respectively. N.T. pp. 105-107, 107-108. Thus, it is apparent that Higgins and Deemer, in their new positions, would no longer function as Assistant Comptrollers.

---

[9] We acknowledge that the Commission's Management Directives can have the force and effect of law. *See Reneski v. Department of Public Welfare*, 84 Pa. Commonwealth Ct. 226, 479 A.2d 652 (1984).

The appointing authority asserts that the 'reassignments' occurred *after* the furlough and are therefore separate and distinct from the furlough process. Instead, argues the appointing authority, they should properly be considered 'reassignments', otherwise permissible under Section 705 of the Civil Service Act. 71 P.S. §741.705.

We, however, note several problems with this argument. First, the difference between the furlough effective date and 'reassignment' is only two work days. Secondly, the appointing authority's Personnel Officer has admitted that the appointing authority knew about the proposed reassignments at the time of the furlough, but judged them to be irrelevant to the furlough issue. Thirdly, once having designated a specific work unit as separate for furlough purposes, any subsequent movements into positions within that unit are properly subject to the applicable recall rights.

Moreover, the appointing authority, by its own actions at the outset of the furlough process effectively precluded the 'single entity' concept. The appointing authority did not include the Comptroller's Offices with its other sections, as a single furlough unit. Instead, the appointing authority selected a more limited unit consisting solely of the individuals within the Comptroller's Offices. Looking strictly at those positions, it is evident that two AE 1 positions (those occupied by Higgins and Deemer) became vacant almost simultaneously with the furlough action. We, therefore, conclude that those positions were 'vacated' as that term is used in Management Directive 580.20, for the purpose of triggering

furlough recall rights. The appointing authority cannot designate one work unit for furlough calculations and another unit for the purpose of calculating recall rights which stem from that very furlough!

We agree with the Commission.

OB also contends that the testimony of F. L. Schaffer, who is the Director of the Commission's Bureau of Audit and Technical Services, supports its position. Mr. Schaffer opined that *if* OB, in completing personnel authorization forms, properly coded Deemer's and Higgins' moves as "708" the persons and the positions would move together. This witness did *not* state that proper coding had occurred nor, as the Commission observed, was he even asked about the propriety of using a "708" code where a furlough reemployment list existed. Thus, the Commission concluded that his testimony did not establish the absence of vacancies when Higgins and Deemer were reassigned. It was within the Commission's province to examine and weigh this evidence and we perceive no error in its having done so.

The next issue we consider is whether the Commission committed error in directing that Braucher be afforded his recall rights. OB and Woelfl contend that it did.[10] The parties maintain that Braucher failed to file a timely appeal and, hence, the Commission was without jurisdiction to afford him relief. It is clear that under Section 951(a) of the Civil Service Act an employee aggrieved by, *inter alia,* a furlough has twenty days from receipt of notice to file an appeal. Here it is undisputed that Braucher did not appeal the underlying furlough. That, however, would not be fatal to his case (as the par-

---

[10] Roetenberg, being higher in terms of recall preference than Woelfl, is not affected by Braucher's recall since there are two vacancies available and he will qualify for the first vacancy because of his seniority.

ties seem to concede) because Braucher may have believed that the furlough action itself was valid. What is at issue here is his right to be recalled. The parties contend that as of April 1987 Braucher had actual notice that his rights could be affected. It was at that time that counsel for Roetenberg and Woelfl advised Braucher of this Court's opinion in *Roetenberg I* and that that opinion, along with any action the Commission might take on remand, could affect him. They argue alternatively that as of July 23, 1987, the day on which Braucher signed the release, he knew he was aggrieved. The Commission issued its adjudication on remand on February 19, 1988. Braucher's rights were therein recognized as being prospective. We were advised at oral argument by Braucher's counsel that a protective appeal had been taken to the Commission on March 21, 1988 (within twenty days of the date Braucher learned of the Commission's remand order).

The propriety of Braucher's precautionary protective appeal and allegations attendant thereto are not the subject of the litigation presently before us. What is before us is the question of whether the Commission exceeded its authority in ordering Braucher's reinstatement. We hold that it did not. The Commission is the agency charged with enforcing the Civil Service Act. It was ordered by this Court to adjudicate the recall rights of certain furloughees. It did so. To suggest that once it determined that Braucher was the individual first on the recall list that it then should have ignored its own finding by not dealing with Braucher's priority position is ludicrous. The Civil Service Act and rules do not provide that an employee be given notice when other employees are recalled. Further, an employee once furloughed cannot be held to know when vacancies occur let alone what recall rights other individuals choose to exercise. Where, in the context of a valid chal-

lenge to a furlough, the Commission discovers a violation of the Civil Service Act as to one not a party to the proceedings, it can certainly direct that that violation be remedied. And while the Commission may have investigatory powers which it may implement upon its own motion, *see* Sections 203 and 951(d) of the Civil Service Act, we do not view its power to act with respect to non parties to be limited to such situations. Indeed, we think our holding is in accord with the purpose of the Civil Service Act (*i.e.* personnel actions should be implemented on the basis of merit) as legislatively set forth. *See* Section 2 of the Civil Service Act, 71 P.S. §741.2. We thus believe that the Commission correctly assessed the situation and acted within its authority to determine that Braucher's rights were prospective only.[11]

Having determined that the Commission committed no error in recognizing certain prospective rights of Braucher, we now accede to Roetenberg's and Woelfl's request that we, in the alternative, examine the propriety of the underlying furlough, a matter we did not (and perhaps in retrospect should have) considered in *Roetenberg I*.[12]

Roetenberg and Woelfl contend that the furlough was improperly upheld by the Commission because OB failed to prove a lack of work. It is well settled that a furlough may only be premised upon a valid lack of

---

[11] Once Braucher is formally offered the position, his rights as to backpay will ripen and can be adjudicated before the Commission. At that time the release he executed may be relevant to the Commission's consideration of the issue.

[12] We express our disagreement with OB that Woelfl's failure to appeal *Roetenberg I* precludes us from considering the underlying furlough at this time. Despite OB's contentions, an appeal from that order would have been improper as our remand would have rendered the appeal interlocutory.

work or a valid lack of funds. *Pronko v. Department of Revenue*, 114 Pa. Commonwealth Ct. 428, 539 A.2d 456 (1988). The appointing authority (OB) bears the burden of proving the lack of work or funds. *Dougherty v. Department of Health*, 113 Pa. Commonwealth Ct. 620, 538 A.2d 91 (1988). The Commission found that OB's decision to reorganize and its implementation of that reorganization created a lack of work within the Accounting Executive I classification. Our review of the record discloses substantial evidence to support this finding. Hence, it will be upheld. *See* Section 704 of the Administrative Agency Law. Where there is a reorganization and resultant furlough the appointing authority meets its burden when it establishes that positions were eliminated, reorganization streamlining occurred, and management in good faith believed that work could be accomplished more efficiently in the absence of the eliminated positions. *Dougherty; Department of State v. Stecher*, 506 Pa. 203, 484 A.2d 755 (1984). We conclude that the Commission properly determined that that burden had been met.

. Next, Roetenberg and Woelfl maintain that they should have been reclassified downward pursuant to Commission Regulation 99.42, 4 Pa. Code §99.42, instead of being furloughed.[13] On this point the Commission wrote:

> [Roetenberg's and Woelfl's] argument that downward reclassification under this Commission's Rule 99.42 would have been a more appropriate personnel action than furlough is, in our opinion, based upon an erroneous assumption.

---

[13] Some doubt as to the continuing validity of this rule exists. *See McHale v. Department of Transportation,* 100 Pa. Commonwealth Ct. 148, 514 A.2d 290 (1986), *petition for allowance of appeal granted,* 515 Pa. 595, 528 A.2d 603 (1987).

> This Commission's Rules 99.41 and 99.42 were developed to require that position classifications reflect the duties actually being performed by an *incumbent* employe. In the present case, there is no evidence that [Roetenberg and Woelfl were] prior to furlough, misclassified; as [Roetenberg and Woelfl were] not . . . incumbent in any of the newly created positions, use of Rule 99.42 would not have been appropriate.

The Commission, of course, is the recognized expert on the appropriateness of various personnel actions within the classified service. It has found no violation of its rule to exist and we agree.

As to the next argument, Roetenberg and Woelfl contend that the furlough was not justified as to seventeen employees in light of the reassignment of two persons into the furlough unit. It must be understood, however, that this reassignment occurred *subsequent to* the furlough and, thus, is irrelevant for determining the number of employees which should have been furloughed. While this reassignment violated certain recall rights, it could not have, as a legal matter, tainted the furlough which came before it.

Roetenberg and Woelfl also challenge the performance evaluation reports (PERs) utilized to determine which individuals should have been furloughed. First, they maintain that the furlough process is suspect because, according to the testimony of Robert Berkoben, Personnel Officer for the Executive Offices, PERs which had not been handed in when due were specifically requested. The Commission determined, however, that the forms were completed by the raters without their knowing of any impending furlough. We, thus, can see no way in which Berkoben's calling and requesting the forms tainted the furlough process. In this same vein Roetenberg and Woelfl assert error in that two dif-

ferent types of forms had been utilized for rating. PERs were used by some raters and Management Performance Evaluation Reports (MPERs) by others. But it was also established that for purposes of furlough only PERs were used and any MPERs which existed were in fact converted to PERs before being used for purposes of furlough. Thus, uniform ratings were in fact utilized and no impermissible "apples vs. oranges" mingling occurred. *Cf. Williams v. Department of Transportation,* 64 Pa. Commonwealth Ct. 153, 439 A.2d 233 (1982); *see also Pronko.*

Finally, Roetenberg and Woelfl maintain that an improper furlough unit was utilized. It is clear that the furlough unit included only those Accounting Executive Is in the comptroller's office. Roetenberg and Woelfl contend that in accordance with the mandates of Section 802 the proper furlough unit was OB in its entirety.[14] Section 802 permits an appointing authority to limit furlough units to a particular department or agency "with headquarters at a particular municipality, county or administrative district of the Commonwealth." More limited units are not specifically authorized. The majority of the Commission opined that there was no evidence that the furlough unit utilized by OB was improper. We think this statement is inaccurate as the evidence disclosed that the comptroller's office was the furlough unit and Section 802 does not support such a limited unit. But, the Commission also determined that even if the entire OB had been the furlough unit, Roetenberg and Woelfl would still have been furloughed. Therefore, it reasoned, and we agree, that there was no valid basis for overturning the furlough.

---

[14] The record reveals that the Commission's then Executive Director had approved the comptroller's office as a furlough unit in and of itself. *See* Appointing Authority [OB] exhibits 8, 9.

*See Pronko; cf. Insurance Department v. Tracz,* 77 Pa. Commonwealth Ct. 502, 466 A.2d 269 (1983) (remand needed to determine who would have been furloughed under proper furlough unit designation). Having determined that Roetenberg and Woelfl cannot prevail upon their allegations of error with respect to the furlough, we uphold the Commission's determination on this issue.

There remains only the question of whether Roetenberg's and Woelfl's attorney is entitled to costs under the Costs Act. The request for such fees, submitted to the Commission in conjunction with a request for reconsideration, was denied.

Section 3(a) of the Costs Act, 71 P.S. §2033(a) provides:

> Except as otherwise provided or prohibited by law, a Commonwealth agency that initiates an adversary adjudication shall award to a prevailing party, other than the Commonwealth, fees and other expenses incurred by that party in connection with that proceeding, unless the adjudicative officer finds that the position of the agency, as a party to the proceeding, was substantially justified or that special circumstances made an award unjust.

"Adversary adjudication" is defined in Section 2 of the Costs Act, 71 P.S. §2032, to exclude an adjudication "[r]esolving disputes concerning the dismissal, suspension, or discipline of any employee of this Commonwealth. . . ." Roetenberg and Woelfl contend that a *furlough* is not excluded under this definition. It is true that the term "furlough" is not specifically mentioned. On this point the Commission wrote:

> The . . . . Costs Act, . . . which governs the award of attorney's fees, exempts from coverage agency adjudications involving 'disputes con-

cerning the dismissal, suspension, or discipline of any employee of this Commonwealth . . .'. The term 'dismissal' is not defined in the Costs Act nor is the term used in the Civil Service Act. Black's Law Dictionary, however, defines the term 'dismiss' as 'to send away; to discharge; to discontinue, to dispose of; to cause to be removed temporarily or permanently; to relieve from duty . . .'. Black's Law Dictionary, 421 (5th ed. 1979). Under the Civil Service Act, the furlough is deemed a temporary separation from the classified service. 71 P.S. §741.801. The Commission, therefore, concludes that the furlough action here under appeal must be considered a 'dismissal' for the purposes of the Costs Act.

(Citations omitted.) We agree completely with this interpretation of the law. Moreover, we note that the purposes of the Costs Act are to "[d]iminish the deterrent effect of seeking review of or defending against administrative agency action" and to "[d]eter the administrative agencies of this Commonwealth from initiating substantially unwarranted actions. . . ." *See* Section 1 of the Costs Act, 71 P.S. §2031. Even assuming without deciding that OB initiated this action by implementing the furlough, rather than Roetenberg and Woelfl initiating it by bringing the litigation, we fail to see how OB's furlough action could be deemed substantially unwarranted when the propriety of the furlough action has been upheld. It was the recall rights of the parties, rather than their furlough rights, that OB failed to consider; a failure which this Court has now set straight based upon the litigation which the *parties* initiated. We also agree with OB that if a dismissal in the sense of a removal for just cause (which carries with it a negative connotation) is excluded from the Costs Act, certainly a

furlough (which carries no negative connotation) should be as well. Accordingly, we uphold the Commission's determination on this issue.

Having, thus, concluded that the Commission's order was in accordance with law and that its findings of fact are supported by substantial evidence, we affirm.

### ORDER

NOW, November 14, 1988, the orders of the State Civil Service Commission in the above captioned matters are hereby affirmed. It is further ordered that the application for intervention filed by William Braucher at No. 652 C.D. 1988 and No. 653 C.D. 1988 is denied and that the motion for action on the application filed at No. 652 C.D. 1988, No. 653 C.D. 1988, No. 701 C.D. 1988 and No. 702 C.D. 1988 is dismissed as moot.

Judge MACPHAIL did not participate in the decision in this case.