558 A.2d 132

Frank C. Gennaccaro and Richard A. Bertini *v.* Clairton School District. Frank C. Gennaccaro, Appellant.

Argued February 9, 1989, before Judge DOYLE and COLINS, and Senior Judge KALISH, sitting as a panel of three.

*Daniel R. Delaney, Daniel R. Delaney & Associates,* for appellant.

*Ira Weiss,* for appellee.

OPINION BY JUDGE DOYLE, April 25, 1989:

Before us is an appeal by Frank C. Gennaccaro (Appellant) from an order of the Court of Common Pleas of Allegheny County which affirmed an order of the

Clairton School District (District) demoting Appellant.[1] The demotion resulted from an administrative reorganization and the attendant staff realignment.

Before setting forth the substantive facts, a preliminary matter requires explanation. Because Appellant's demotion occurred in the context of a reorganization and realignment, it was uncertain whether his case fell under the ambit of Section 1151 of the Public School Code of 1949 (Code), Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §11-1151 (pertaining to demotions) or Section 1125.1(c) of the Code,[2] 24 P.S. §11-1125.1(c) (mandating that "[a] school entity shall realign its professional staff so as to insure that more senior employes are provided with the opportunity to fill positions for which they are certificated and which are being filled by less senior employes"). In order to be certain that he went before the proper tribunal when he sought review of the District's adjudication, Appellant filed an appeal both with the Secretary of Education and the common pleas court. The matter before the common pleas court was held in abeyance while the Secretary considered the appeal. The Secretary issued a decision in which he denied, on the merits, Appellant's appeal from his demotion under Section 1151 of the Code and declined to decide, on the basis of lack of jurisdiction, whether there had been a violation of Section 1125.1. The common pleas court then proceeded on the basis of the record made before the District together with stipulations which augmented the

---

[1] As will be explained in the text of the opinion, the common pleas court was not actually reviewing a demotion, as that personnel action was properly reviewed by the Secretary of Education. The common pleas court was instead reviewing the District's refusal to realign Appellant to an allegedly available and suitable administrative position.

[2] Section 1125.1 of the Code was added by Section 3 of the Act of November 20, 1979, P.L. 465.

record to review the District's order insofar as Appellant alleged that the order violated Section 1125.1 of the Code. The lower court upheld the District's determination and this appeal ensued. The Secretary's order has also been appealed to this Court and that case has been held in abeyance pending our determination in the instant case. Procedurally, this matter has been presented in an exemplary manner.

The facts which follow form the basis for this appeal. In December 1980, the Clairton Board of School Directors passed a resolution reorganizing the secondary school administration by abolishing, effective June 30, 1981, three of the four administrative positions then in existence. The following chart depicts what occurred:

| Pre-June 30, 1981 Position | Person Occupying Position | Post June 30, 1981 Status of Position |
|---|---|---|
| Career Education Principal | DeSue | Abolished |
| Director of Secondary Education—Federal Coordinator | Gennaccaro | Abolished |
| Middle School Principal | Bertini | Abolished |
| High School Principal | Jeter | Retained |

On January 27, 1981, however, the District posted a notice that two "new" secondary administrative positions existed and would be filled as of July 1, 1981. These two new positions were entitled Assistant Principal (high school building)[3] and Administrative Assistant to the Superintendent-Federal Coordinator.

---

[3] It appears from the record that the high school and middle school were in the same building at the time the District decided to consolidate the two principalships in the single building and instead have one principal for the entire building and one assistant principal. In any event, as of July 1, 1981, three positions were to be abolished and two new ones were created and were to be filled.

Section 1125.1 requires that when there is a realignment in the context of a reorganization, the District must carry out the realignment so that the more senior employees are provided with the opportunity to fill positions for which they are certified and which are being filled by less senior employees. The District had four individuals who were certified as administrators. In order of seniority these individuals were: DeSue, Bertini, Gennaccaro, and Jeter. Since its reorganizational plan entailed retaining one position and creating two new ones it appeared that three positions existed and should have been offered to DeSue, Bertini and Gennaccaro respectively. The District did place its most senior administrator, DeSue, in the newly created position of Administrative Assistant to the Superintendent-Federal Coordinator. It, however, kept Jeter (who had the least seniority of the four) in the position he had previously occupied, *i.e.*, High School Principal. With respect to the new Assistant Principal (high school building) position, the District determined to assign two individuals denominated as "Program Specialists" (who were not certified in administration) to discharge the duties of this position which Appellant alleges should have been performed by a person certified in administration. After hiring the Program Specialists, the District then withdrew the posted position of Assistant Principal (high school building) and, thereupon, demoted both Appellant and Bertini to classroom music teachers (both were certified to teach music). Appellant, along with Bertini, then appealed his demotion and the District held hearings. Both Bertini and Appellant failed to prevail. As we have previously explained, appeals to both the Secretary of Education and the common pleas court ensued.

Inasmuch as Appellant did not prevail below either before the Secretary or the common pleas court, he sought review by this Court. We consider at this juncture

only the appeal from the trial court's order. Appellant presents two issues for our consideration. First, he maintains that the District's refusal to realign its employees on the basis of strict seniority was violative of Section 1125.1. Second, he asserts that the District's refusal to place him in one or both of the positions ultimately filled by the Program Specialists was violative of Section 1125.1.

We shall examine each of these issues in turn. We consider first the position of High School Principal. Appellant contends that the District committed error when it retained Jeter, who was fourth in seniority, in the position of High School Principal and demoted Bertini and Appellant. We agree that the District acted improperly in so doing. The School Board does not appear to dispute that its retention of Jeter was improper, but maintains that because Appellant was third in seniority, Bertini, rather than Appellant, was the only one who had standing to raise this issue because Bertini, rather than Appellant, should have been offered the position.

Similar standing questions have arisen before. In *Gibbons v. New Castle Area School District,* 518 Pa. 443, 543 A.2d 1087 (1988) there were two employees, one a principal and one a vice-principal, both more senior than Gibbons, who were both laterally transferred from one junior high to another in the context of a reorganization and resultant personnel realignment. Those two employees did not appeal. Gibbons, who was realigned from a position as a junior high school principal to a senior high school *vice-principal,* did appeal. The fourth individual, who had less seniority than Gibbons was retained as high school principal. Gibbons asserted that he should have been placed in a position as a junior or senior high school principal (as opposed to vice-principal) because he had more seniority than the administrator filling the senior high school principal position. The school board held, *inter alia,* that Gibbons lacked standing to claim one of

the two secondary principal positions because he was third on the seniority list. Unfortunately, the Supreme Court, while it mentioned this issue in its recitation of the facts, chose not to discuss it but proceeded to decide that Gibbons must lose on the merits. We are hesitant to read the *Gibbons* opinion as giving guidance, one way or the other, in resolving the standing question.

More helpful, however, is *Roetenberg v. Office of Budget,* 121 Pa. Commonwealth Ct. 97, 550 A.2d 825 (1988). The facts in *Roetenberg* are exceedingly complex but, succinctly stated, a furlough occurred under Sections 802 and 3(s) of the Civil Service Act, Act of August 5, 1941, P.L. 752, *as amended,* 71 P.S. §§741.802, 741.3(s) respectively. Later, certain employees alleged that their rights of recall to the positions had been violated. There were two positions in issue. A Mr. Braucher, who was first in terms of seniority, should have been called back first followed by Roetenberg and then a Mr. Woelfl. But, Braucher, at the time Roetenberg's and Woelfl's cases were adjudicated before the Commission, had not appealed to the Commission. Braucher later did file an appeal. The Commission held that Roetenberg was to be placed in one of the positions but that Woelfl's right to reinstatement was conditional only and would hinge upon whether Braucher, who was statutorily entitled to the position, chose to assert his rights prospectively. We upheld this determination.

Applying the *Roetenberg* logic to the facts here, it is clear that with respect to the High School Principal position, Jeter was wrongfully retained and that position should have been offered to Bertini. But Bertini, unlike Braucher in *Roetenberg*, promptly contested the realignment, and the briefs advise us that his case was ultimately settled with Bertini being given a position and Jeter no longer being employed by the District. Because Bertini clearly had rights superior to Appellant *and chose to*

*assert them,* we must conclude that as long as only two positions existed, High School Principal and Administrative Assistant to the Superintendent-Federal Coordinator, Appellant, who ranked third in seniority, had no right to either of those positions and no standing to challenge the District's filling of those positions. He would have had standing only if DeSue and/or Bertini chose not to assert their rights.

We must, thus, consider the question of whether a third administrative position existed. Appellant asserts that one did and that the two Program Specialists are actually performing administrative duties. The District, of course, maintains that the duties being performed by the two Program Specialists are not administrative, and that subsequent to posting the position of Assistant Principal (high school building), it simply determined that no such administrative position was necessary and, hence, withdrew it. We note at the outset that the District withdrew the Assistant Principal (high school building) position *after* it had interviewed applicants for it and after it had hired the two Program Specialists. Additionally, we are puzzled as to why, if the position denominated Assistant Principal (high school building) was viewed by the District an administrative one, and certainly it was since it was posted as such, any interviewing would have been necessary. *If* a third administrative position existed, it rightfully belonged to Appellant, who was third in terms of seniority. These facts are important because Appellant contends that once the District realized it would have to offer him the position, it devised a plan of redesignating the position as non-administrative so as to avoid employing him as an administrator allegedly because the Superintendent of the School District believed Appellant to be disloyal to him. Such action, if proven, would clearly violate the spirit if not the letter of Section 1125.1 of the Code.

At the outset, however, certain principles must be made clear. The District was under no obligation to create the Assistant Principal (high school building) position. Once it did create it, it was under no obligation to fill it. If, however, it chose to fill such a position it would be required to offer it first to Appellant on the basis of the seniority provision in Section 1125.1 of the Code. It is also clear that if the District determined that the duties it envisioned being done by the Assistant Principal (high school building) were duties which could legally be performed by someone without a certificate in administration, it could certainly retitle the position and hire an appropriate individual(s) to fill it. But what the District cannot do is merely retitle an administrative position which contains administrative duties and give it to an individual(s) not certified in administration. Further, the District cannot eliminate the administrative duties of the position and reassign those duties to other administrators (or reassign them to no one at all) *when it has an impermissible motive for doing so*. It is allegations of this type which form the basis of Appellant's case.

In order to examine Appellant's contention, it is necessary to know what the duties of the Program Specialists were. Those duties must then be compared with the duties of the Assistant Principal (high school building) and evidence must be presented as to which, if any, of those duties require administrative certification. Further, because the position of Assistant Principal (high school building) as conceived certainly contained administrative duties, evidence is needed on what happened to those duties. Of course, evidence can also be presented on whether or not the District reassigned certain duties so as to render the position non-administrative and whether or not it had an improper motive for doing so.

Our review of the record discloses that despite the lengthy proceedings before the District, the record con-

tains little evidence on these crucial points. Moreover, the District made absolutely no findings on these issues. With respect to the duties of the Program Specialists, a stipulation filed of record with the trial court indicates the following:

> 9. [The Program Specialists'] *administrative* duties *included* issuing both in-school and out-of-school suspensions to students, administering corporal punishment to students, meeting with students to discuss disciplinary actions, meeting with parents to discuss students' disciplinary actions, issuing suspensions and detentions for tardiness to school, tardiness to class, class cutting, being off school grounds during the school day, insolence, class disturbances, smoking, refusing to be disciplined, fighting, and any other discipline-related acts. (Emphasis added.)

Further, the Program Specialists' certificates, along with their job descriptions, were admitted by stipulation into evidence before the trial court. The job descriptions indicate as the "Major Duties and Responsibilities" the following:

> 1. To insure that students do not roam the halls.
>
> 2. To keep students on school grounds during the lunch period.
>
> 3. To intercept unauthorized personnel found in the building.
>
> 4. To verify that lavatories are properly used for the purposes for which they are intended.
>
> 5. To assist any teacher requesting such assistance in escorting a student to the office.
>
> 6. To carry out any other duties related to building security as may be legally delegated by the principal.

There is, however, a dearth of evidence on what the ill-fated Assistant Principal (high school building) duties entailed. The record reflects the following: Dr. Haffner, Superintendent of the District, testified that Mr. Jeter (who at the time of the District hearing was the High School Principal) was given two Program Specialists to assist him because there was no Assistant Principal (N.T. 51, Vol. II[4]); that the two Program Specialists are not administrators but are aiding the administrator (then Mr. Jeter) but not in discharging administrative duties (N.T. 65, Vol. II); that the High School Principal had inherited *all* the duties of the Middle School Principal (formerly Bertini) (N.T. 66, Vol. II); that the job posting for Assistant Principal (high school building) was not composed of the duties that the Middle School Principal did (N.T. 28-30, Vol. III); and, that the Assistant Principal was to "assist the principal" (N.T. 30, Vol. III).

In contrast, Bertini testified in the District hearing that in a meeting with Dr. Haffner, that individual indicated that while he could not give Bertini any job description of the Assistant Principal (high school building) position, it was similar to the position which Bertini had been fulfilling right along, *i.e.*, Middle School Principal. (N.T. 83, Vol. III). All of this testimony is conclusory in nature and woefully lacking in specificity. This Court, quite frankly, can find no meaningful evidence as to what the duties of the Assistant Principal (high school building) were to have been. Despite this, however, the trial court in its opinion determined that the two Program Specialist positions were not administrative positions but teaching positions and that the additional duties assigned to the Program Specialists "were not sufficient in type or quan-

---

[4] Volume numbers refer to the volumes of the testimony as those volumes are denominated in the original record.

tity to be treated as or properly labelled de facto administrative positions."[5]

We, however, can find no factual basis on the record to support this conclusion because of the absence of any specific evidence on what the administrative duties of the Assistant Principal (high school building) would have been and whether in fact the two Program Specialists performed those duties and if not, who did. Normally, of course, when evidence is lacking to support necessary findings, the case will be resolved against the burdened party. In this case, however, we believe that part of the difficulty was caused by the dual personnel actions before the District (demotion and refusal to realign) and uncertainty as to who bore the burden of proof with respect to the reasons for withdrawing the posted position of Assistant Principal (high school building). Accordingly we shall, in the interest of justice, remand to the trial court for the taking of additional evidence. *See* Section 706 of the Judicial Code, 42 Pa. C. S. §706 (permitting an appellate court to require "such further proceedings to be had as may be just under the circumstances").

We wish to make it clear that on remand the initial burden will be on the District. We have held that in the context of the elimination of a school program and the resultant suspension of a teacher the burden is on the District to establish that the suspension was motivated by a desire to provide a more efficient school system and that a department may not be abolished so as to accomplish the suspension or dismissal of a teacher for political or arbitrary reasons by subterfuge. *Glendale School District v. Feigh,* 99 Pa. Commonwealth Ct. 470, 513 A.2d 1093 (1986), *petition for allowance of appeal denied,* 515 Pa. 587, 527 A.2d 547 (1987); *Cadonic v. Northern Area*

---

[5] As we previously mentioned, the District's adjudication never addressed this issue at all and made no findings on this point.

*Special Purpose Schools,* 57 Pa. Commonwealth Ct. 42, 426 A.2d 186 (1981); *Sporie v. Eastern Westmoreland Area Vocational-Technical School,* 47 Pa. Commonwealth Ct. 390, 408 A.2d 888 (1979). Although the narrow issue here does not involve a suspension due to program elimination, we believe that the posting and subsequent withdrawal of an administrative position in the context of an administrative reorganization is a sufficiently similar situation so as to mandate the application of the *Sporie* rule.

Here the position originally posted was administrative. Thus, it must have contained administrative duties. But what duties were in fact envisioned to be subsumed in the position and what happened to those duties are matters solely within the District's knowledge. Thus, it must present *specific* evidence as to what the duties of the Assistant Principal (high school building) were, what happened to the administrative duties encompassed within that position, and why it was determined to withdraw the position after it had been posted. Once the District presents this evidence, the burden then shifts to Appellant to demonstrate that the District's asserted reasons for withdrawing the Assistant Principal (high school building) position and creating the Program Specialists positions were improperly motivated or pretextual. Appellant might demonstrate this by establishing, for example, (1) that the Program Specialists are actually doing administrative duties, *or* (2) that, while the Program Specialists are not doing administrative duties, it is only because the administrative duties which would have been performed by the Assistant Principal (high school building) are not being performed by anyone or were assigned to another administrator for an improper motive, for example, to avoid having to offer Appellant the position. If the trial court determines that Appellant was improperly excluded from the Assistant Principal (high

school building) position, it is to direct that Appellant (who we are advised is now retired) be given damages consisting of the pay differential between the Assistant Principal (high school building) position and the position to which he was demoted together with the appropriate adjustments for retirement benefits and other relevant benefits.

Based upon the foregoing opinion, the order of the trial court is vacated and this case is remanded for further proceedings consistent with this opinion.

ORDER

NOW, April 25, 1989, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is hereby vacated. This case is remanded to the trial court with directions that it allow the parties to present additional evidence only on the issues specified in our opinion including, if necessary, the issue of damages. The trial court is directed to make the necessary findings of fact and enter an appropriate order.

Jurisdiction relinquished.