Alexander A. Reneski, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued June 7, 1984, before Judges CRAIG, DOYLE and BLATT, sitting as a panel of three.

*Samuel L. Spear, Meranze, Katz, Spear and Wilderman,* for petitioner.

*Gary Goldman,* Assistant Counsel, for respondent.

OPINION BY JUDGE CRAIG, July 30, 1984:

Alexander Reneski, a former Personnel Analyst III, appeals from an order by the State Civil Service Commission (commission) which sustained his furlough from the Department of Public Welfare (DPW).

Although we have been asked to address a number of issues, we need only resolve the following question to determine if Mr. Reneski is entitled to reinstatement and backpay: Did the commission legally err by determining that management directives do not have the force of law? Because we conclude that it did, and that DPW consequently deprived Mr. Reneski of certain safeguards affecting his furlough rights, we reverse.

In 1980, the Secretary of DPW initiated a reorganization to consolidate, among other things, personnel functions being performed in (1) Harrisburg, (2) four regions of the Commonwealth, (3) counties and (4) major hospitals and institutions. Accordingly, by letter dated November 5, 1981, DPW informed Mr. Reneski that, effective December 4, 1981, it was furloughing him from his position as a Personnel Analyst III, regular status, for lack of work.

Appealing that determination to the commission, Mr. Reneski argued that, among other things, DPW had violated Management Directives 580.20 and 580.17.

Directive 580.20(4)(a) provides that "[u]nless previously submitted, within 60 calendar days from the issue date of this directive [January 30, 1981], agencies will identify furlough units . . . [for classes not covered by collective bargaining agreements] and submit a list of them in writing to the Executive Director, SCSC."

Directive 580.20(4)(e) provides that "[a]t least 30 calendar days before the effective date of furlough

action, agencies will furnish written notification to employees and the SCSC...."

Directive 580.17(2)(a) states that "[b]efore furlough action is taken, the most recent annual . . . performance evaluations for all regular status employees in the same class and under the same appointing authority *and furlough unit* shall be converted to numerical scores and placed in relative-ranks, from high to low, to determine which employees are in the lowest quarter for furlough purposes." (Emphasis added.)

Citing *Marks v. Civil Service Commission,* 7 Pa. Commonwealth Ct. 414, 299 A.2d 691 (1973), the commission determined that "Management Directives are *suggested* procedures which agencies are free to adopt; they do not have the force of law." (Emphasis in original.) Accordingly, the commission proceeded under the assumption that DPW neither had to identify a proper furlough unit before taking action against Mr. Reneski nor had to comply with the thirty-day notice provision. Even so, the commission found that the southeast administrative field office, where Mr. Reneski worked, was a proper furlough unit. We must disagree.

This court has recently concluded that numbered management directives announcing detailed policies, programs, responsibilities, and procedures relatively permanent in nature and which have been signed by the Governor, Lieutenant Governor, Budget Secretary, Secretary of Administration, or the head of any department or independent board, commission or council under the Governor's jurisdiction have the force of law when they are based upon authority or duty conferred by constitution, statute or regulation. *See Bowe v. Unemployment Compensation Board of Review,* 83 Pa. Commonwealth Ct. 221, 477 A.2d 587 (1984), citing 4 Pa. Code §§1.1, 1.2 as legal authoriza-

tion for Management Directive under the gubernatorial Directives Management System. *But see Wilt v. Department of Revenue*, 62 Pa. Commonwealth Ct. 316, 436 A.2d 713 (1981) (in dismissal of non-civil service employee, only those directives of the Governor which are authorized by the Constitution or promulgated pursuant to statutory authority have the force of law; a departmental regulation does not constitute that kind of constitutional or statutory authority) (ROGERS, J., dissenting).

Here the management directives announce detailed policies and procedures governing the seniority and reemployment rights of furloughees. They issue from the Governor's office, signed by the commission's executive director. Consequently, they have the force of law. *Bowe.*

Moreover, Management Directives 580.20(4)(a), 580.20(4)(e) and 580.17 (2)(a) do not merely suggest procedures; they are mandatory by their very terms. In all cases, the directives state that an agency ''will'' or ''shall'' take certain actions to protect a furloughee's rights. DPW contends that we must defer to the commission's interpretation, citing *Hamburg v. Department of Education,* 73 Pa. Commonwealth Ct. 225, 237, 458 A.2d 288, 293 (1983) (court accords an administrative agency's interpretation of its own regulations controlling weight unless that interpretation is clearly erroneous or inconsistent with the statutory mandate). We cannot defer to the commission here, however, because (1) the commission did not promulgate the directive it interpreted, and (2) its interpretation is inconsistent with the express language of the directives.

The commission's reliance on *Marks* is misplaced. In that case, a civil servant, relying on a numbered Director's Letter from the commission, argued that his furlough notice was defective because the infor-

mation which he received should have contained instructions concerning his rights of appeal; we found the Director's Letter to be directory and, in the alternative, stated that we could find no statutory authority to make such a requirement mandatory. 7 Pa. Commonwealth Ct. at 417, 299 A.2d at 693.

Here, however, the language of the management directives is mandatory and the Civil Service Act,[1] read in conjunction with the commission's own regulations, provides a basis for requiring an agency to identify furlough units and furnish employees with sufficient notice.

As to the identification of furlough units, section 802 of the Act[2] states that ''[a]n employee shall be furloughed only if at the time he is furloughed, he is within the lowest quarter among all employees of the employer in the same class on the basis of their last regular service ratings, and within this quarter he shall be furloughed in the order of seniority. . . .''[3]

Under section 203's mandate to ''establish . . . rules . . . *for making effective the provisions of this Act*'' (emphasis added),[4] the commission promulgated a rule, at 4 Pa. Code §101.1(d), which provides that ''[r]egular employees who are in the same class of

---

[1] Act of August 5, 1941, P.L. 752, *as amended*, 71 P.S. §§741.1- 741.1005.

[2] 71 P.S. §741.802.

[3] Section 3(g) of the Act defines "class" as follows:

[a] group of positions in the classified service which are sufficiently similar in respect to the duties and responsibilities thereof that the same descriptive title may be used for each of such positions, the same requirements as to experience, knowledge and ability are demanded of incumbents, the same tests of fitness may be used to choose qualified appointees, and the same schedule of compensation may be made to apply with fairness under like working conditions.

[4] 71 P.S. §741.203(1).

position *and furlough unit* and in the lowest quartile of service ratings, shall be furloughed in the inverse order of seniority." (Emphasis added.) In making effective the statutory mandate to compare similarly situated employees, this rule necessarily requires an agency or department to designate furlough units before commencing a reduction in force and thereby undermines the commission's determination that Management Directive 580.20(4)(a) was not meant to have the force of law.

DPW contends that, even if this management directive is binding, substantial evidence supports the commission's finding that the southeast administrative field office was a proper furlough unit. We cannot agree.

As a basis for that finding, the commission relied upon the testimony of David R. Guy, DPW's Chief of Position Management and Employee Relations, who stated that DPW had used the southeast administrative field office as a designated furlough unit previously. On cross-examination, however, Mr. Guy retracted his statement, testifying only that DPW had used the southeast region for other non-furlough purposes.

By DPW's failure to designate a proper furlough unit before implementing its reduction in force, we can only conclude that, at the time of his furlough, Mr. Reneski was a member of some as yet unidentified, conceivably statewide, unit of personnel analyst III employees of DPW. Because it did not compare his seniority rights with members of that unit, DPW acted arbitrarily.

As to the furnishing of thirty days notice, section 950 of the Act provides that written notice of any personnel action "shall be furnished within time limits prescribed by the rules of the commission."[5]

---

[5] 71 P.S. §741.950.

The commission, however, has not chosen to specify time limits in the regulations, which provide only that "[e]ach appointing authority shall give his [sic] employees advance written notice of any personnel action. . . ." 4 Pa. Code §105.1. Rather, the commission has opted to fulfill the General Assembly's section 950 mandate by prescribing a thirty-day notice requirement in Management Directive 580.20(4)(e). Under these circumstances, the commission may not disclaim the validity of the management directive on the grounds that it was not issued in the form of a regulation or that its language is merely directory. *Cf. DeFrank v. County of Greene*, 50 Pa. Commonwealth Ct. 30, 412 A.2d 663 (1980) (county estopped from denying validity of procedures for discharge set forth in county's personnel manual); *accord Service v. Dulles*, 354 U.S. 363, 388 (1957) (if dismissal from employment is based on defined procedure, even though generous beyond the statutory requirements that bind the agency, that procedure must be scrupulously observed).

Because the commission (1) erroneously determined that the applicable management directives do not have the force of law and are merely directory and (2) failed to support a critical finding of fact with substantial evidence, we must reverse.[6]

ORDER

Now, July 30, 1984, the order of the State Civil Service Commission, No. 3930, dated January 21, 1983, is reversed and the Department of Public Welfare is ordered to reinstate Alexander A. Reneski as a Personnel Analyst III, regular status, with backpay.

---

[6] Because of our order, we need not address the issues of whether substantial evidence supports the commission's lack-of-work determination or whether the commission erred by concluding that DPW did not discriminate against Mr. Reneski.