568 A.2d 733

Gary TENER, Petitioner,

v.

COMMONWEALTH of Pennsylvania, UNEMPLOYMENT
COMPENSATION BOARD OF REVIEW, Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 3, 1989.

Decided Jan. 8, 1990.

John Stemper, for petitioner.

Maribeth Wilt–Seibert, Asst. Counsel, with her, Clifford F. Blaze, Deputy Chief Counsel, for respondent.

Before DOYLE and McGINLEY, JJ., and BARBIERI, Senior Judge.

McGINLEY, Judge.

Gary Tener (Claimant) appeals from an order of the Unemployment Compensation Board of Review (Board) which affirmed a referee's denial of training benefits under the Trade Act of 1974 (Trade Act), *as amended*, 19 U.S.C. §§ 2101–2487.[1]  We affirm.

Claimant was employed by LTV Steel Corporation (LTV) for almost twenty years as a purchaser/buyer for lab equipment and was permanently furloughed in June 1986. Claimant applied for trade adjustment assistance (taa) training for a one year course in public management offered by

1. "The Trade Act established a federal program administered through the states' unemployment compensation bureaus, to provide benefits to workers in industries certified by the Secretary of Labor as adversely affected by unfair or injurious import competition." *Wilson v. Unemployment Compensation Board of Review,* 106 Pa.Commonwealth Ct. 306, 307, n. 1, 526 A.2d 452, 453, n. 1 (1987).  Claimant was certified for training readjustment allowance (TRA) benefits under Petition TA–W–16977, and was determined to be an adversely affected worker under said petition.  (Finding of Fact No. 2, Referee's Decision, September 29, 1988, at 1.)

Carnegie Mellon University in Pittsburgh, Pennsylvania, at a cost of $20,200.00. The Claimant has a Bachelor of Science Degree with a major in political science and a minor in economics and had made numerous attempts at obtaining employment with no success. (Findings of Fact Nos. 2 and 4, Referee's Decision at 1.) The Office of Employment Security (OES) denied Claimant's request on May 25, 1988, concluding that there was no evidence that suitable employment was not available to Claimant based on his existing education and experience and because the cost for the proposed training was excessive. (Employability Services Denial, Certified Record, Item No. 2.) The referee affirmed the denial, concluding that there had not been an adequate showing that suitable employment was not available to Claimant or that the Claimant's employability would be improved by the training he was currently pursuing. (Referee's Decision at 2.) Claimant appealed and the Board adopted and affirmed the referee's decision on February 22, 1989. Claimant appeals arguing that the Board's decision is not supported by the record.

Our scope of review is limited to determining whether the findings of fact are supported by substantial evidence, whether any error of law was committed or whether any of the parties' constitutional rights have been violated. *Estate of McGovern v. State Employees' Retirement Board,* 512 Pa. 377, 517 A.2d 523 (1986). "[D]enial of any type of taa benefits to individual workers, who have been certified as eligible to apply, is appealable in the same manner as any decision of the OES." *Wilson,* 106 Pa.Commonwealth Ct. at 308, n. 5, 526 A.2d at 453, n. 5.[2]

■ Section 236(a) of the Trade Act, 19 U.S.C. § 2296(a) provides, in pertinent part:

(1) If the Secretary determines that—

**2.** Section 239(d) of the Trade Act, 19 U.S.C. § 2311(d) provides: "A determination by a cooperating State agency with respect to entitlement to program benefits ... is subject to review in the same manner and to the same extent as a determination under the appropriate State law and only in the manner and to that extent."

(A) there is no suitable employment (which may include technical and professional employment) available for a worker,

(B) the worker would benefit from appropriate training,

(C) there is a reasonable expectation of employment following completion of such training,

(D) training approved by the Secretary is available to the worker from either governmental agencies or private sources (which may include area vocational education schools, as defined in Section 195(2) of the Vocation Education Act of 1963, and the employers), and

(E) the worker is qualified to undertake and complete such training,

the Secretary may approve such training for the worker. Upon such approval, the worker shall be entitled to have payment of the costs of such training paid on his behalf by the Secretary. Insofar as possible, the Secretary shall provide or assure the provision of such training on the job, which shall include related education necessary for the acquisition of skills needed for a position within a particular occupation.

The Department of Labor has promulgated regulations which add the following criteria:

(e) *Conditions for approval.* Subject to the availability of funds allocated by the Department of State to pay for the full costs of training, training may be approved for an individual adversely affected worker only if the State agency determines that:

(1) No suitable employment including technical and professional employment is available. For purposes of this section, the term 'suitable employment' means, with respect to an individual, work of a substantially equal or higher skill level than the individual's past adversely affected employment and wages for such work at not less than 80 percent of the individual's average weekly wage;

(2) The individual would benefit from appropriate training;

(3) There is a reasonable expectation (not necessarily a prior guarantee) of employment following completion of training;

(4) Approved training is available to the individual from governmental agencies or private sources, which may include area vocational education schools (as defined in section 521(3) of the Carl D. Perkins Vocation Education Act) and employers; and

(5) The individual is qualified to undertake and complete such training.

20 CFR § 617.22.

Claimant argues that suitable work was not available and that the training at Carnegie Mellon would improve his employability. Our review of the record reveals that the Claimant worked as both a purchasing agent and in the accounts payable section of LTV. (Notes of Testimony, September 6, 1988, (N.T.) at 3.) Claimant was permanently furloughed in June 1986, subsequently he worked as a commissioned salesman until March 1987, then accepted a commission sales job with a salary, and was employed until February 1988:

AC: And, I did an awful lot of work for them and was trying to build a career in sales. And, I think the employer was pretty much looking for a temporary type person who would do a lot of marketing research for them and then kick me out the door.

QR: Okay. You are currently unemployed?

AC: Yes.

QR: Okay. Then you applied for training under the Trade Act, is that correct?

AC: Yes, sir.

*Id.*

Claimant did not testify at the hearing, nor is there any other evidence of record, regarding wages from the sales commission jobs. In its brief to this Court, the Board asserts that Claimant was able to secure employment as a commission sales person twice after his separation from

Employer and that, at the referee's hearing Claimant did not indicate that he regarded the positions as unsuitable. (Board's brief at 12.) The Board argues that the referee exercised "its fact-finding powers by accepting the testimony of the Claimant that he had secured two full-time sales jobs as credible," and therefore, there is substantial evidence to support the conclusion that the Claimant had twice found suitable employment as a full-time salesperson. (Board's brief at 13–14.) Claimant asserts in his brief to this court that the sales commission jobs did not constitute "suitable employment" because his highest quarterly wage in his base year at LTV was $10,215.00 plus benefits, and therefore his average weekly wage was "less than 80 percent of the individual's average weekly wages" under 20 CFR § 617.22. (Claimant's brief at p. 9, n. 4.)[3] Before the referee the Claimant testified that he contacted 119 companies concerning employment and that in return he had received only a few letters indicating receipt of his application. (N.T. at 4–5.) Eighty percent of Claimant's highest quarterly wage in his base year would be $628.00, Claimant now asserts. Claimant states that the sales commission jobs paid no more than $400.00 per week, and therefore the referee's conclusion that the lack of suitable employment was not shown, is not supported by substantial evidence. However, before the referee, Claimant did not testify as to the wages he received from the sales commission jobs, and offered no evidence of these wages. Similarly, the Trade Act Coordinator for the Commonwealth, Richard Radel (Radel), presented no evidence to support its argument that the sales commission jobs, or any other jobs, were in fact suitable. Neither the testimony of Claimant, nor Radel's testimony constitutes substantial evidence to support the conclusion that suitable employment was available to Claimant, as the Board asserts.

Radel's testimony consisted of the following:

3. "Average weekly wage" is defined as 1/13th of the individual's highest quarterly wages in the year preceding separation. 20 CFR § 617.3(B)(f).

AO: Well, the only thing is that the gentleman here does have a degree and he does have nineteen years' [sic] experience with this major corporation and it's [sic] various levels of management, according to information that was submitted. And, he did state in his application that he would be willing to relocate in the pursuit of employment. And, the other thing about the excessive costs, the Federal Register does clearly state that an individual should apply or receive training at the most reasonable cost available. And, well, that's the reason that we decided that the cost of Carnegie–Mellon would be excessive.

QR: Did (INAUDIBLE)? Is the same training available elsewhere at a lower cost?

AO: Oh, I really would not be able to answer that unless I would have had an opportunity to research the matter. But, I would certainly think that similar or comparable education would be available at another institution in the Pittsburgh area.

N.T. at 4.

Radel questioned Claimant:

QO: Yes, I was just ... would like to ask him, I believe he said he's filed an excess of 119 employment applications. And, I'm wondering if these applications were filed in response to jobs that were advertised in his career field or was this just like a shotgun approach?

AC: Well, sir, they were both. I knew or I've been told that I can't go too far astray from what I had done, although I think I'm very adaptable. But, it's very hard to attract an employer's attention when you're coming to them with twenty years of research and buying experience. They want to classify you as a research buyer. Okay. So as a result, there are hardly 120 employers in Pittsburgh that have research facilities. So, I have to try to market myself as a buyer. I had to try to market myself as a research buyer. I tried to market myself as a salesman. I tried to market myself, sir, as a very conscientious worker who could adapt to any sort of facility,

any sort of responsibility. And, included in those applications that I sent, were all the airlines, doing anything for them, all the cargo companies, these are things that are coming right off the top of my head now. Let me reference my list if I may. Anything where I thought my experience as an office person could translate into a job. I reference here, if I may, sir, Federal Office, I'd went there and checked their facilities....

QO: My question wasn't really so much as to where you have applied, if you applied to places where you knew that a job existed, that you would qualify it [sic].

AC: No, sir. I just don't have that kind of information on where, you know, where people are hiring. I did hear through the grapevine recently that Metal Tech ... out in Latrobe, was hiring and I called and talked to their personnel person, saying that I heard through, you know, the grapevine that you were looking for industrial buyers and she assured me that they weren't. So, no, the places that I was filling out applications were not places where I knew that they were looking for people. No.

N.T. at 7–8.

The Board affirmed the referee's conclusion that Claimant had not shown the requisite lack of suitable employment. The referee, in Finding of Fact No. 4, found that "[t]he claimant has made numerous attempts at obtaining employment and has not been successful to date." (Finding of Fact No. 4, Referee's Decision at 1.) Yet, the referee, after a careful review of the record before him and testimony taken at the hearing concluded that there has not been an adequate showing that suitable employment is not otherwise available to the claimant. (Referee's Decision at 2.) We disagree with the referee's conclusion that Claimant's "numerous attempts at obtaining employment" does not constitute an adequate showing that suitable employment is not otherwise available. Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Murphy v. Department of Public Welfare*, 85 Pa.Commonwealth Ct. 23, 480 A.2d

382 (1984). The referee's conclusion that Claimant did not make an adequate showing is not supported by substantial evidence and unsupported by the referee's own finding of fact.

Claimant also argues that his employability will be improved by the training he is pursuing at Carnegie Mellon, and that the Board's conclusion to the contrary is not supported by the evidence. Claimant relies upon a letter dated January 18, 1989, from Harry Faulk, Carnegie Mellon's Associate Dean for Executive Education, in which Dean Faulk describes Claimant as an "ideal candidate" for the Public Management Program. (*See* Claimant's Brief to the Board, Item No. 9; Claimant's Brief to this Court, Exhibit C.) In this letter to Claimant, Dean Faulk stated that "management education is critical to your career goals," and that Carnegie Mellon's records indicate that all of its graduates are employed. (*Id.*)

■ The Board requests this Court to disregard this letter because it was not properly entered into evidence.[4] Claimant appended the letter from Dean Faulk to his brief which was submitted to the Board on January 24, 1989. (Claimant has also attached the letter as an exhibit to his brief to this Court.) The Board states that it did not consider this letter based upon 34 Pa.Code § 101.106[5] which restricts the Board to reviewing both the facts and the law pertinent to the issues involved on the basis of the evidence

4. The Board also asks this Court to strike the Claimant's brief because it is "so entwined with references to facts not part of the certified record." (Board's brief at 9.) Claimant's brief does contain some facts not of record as defined under Pa.R.A.P. 1921. Accordingly, our review is restricted to those facts of record that support Claimant's arguments and we will not strike Claimant's brief because there are sufficient facts of record to enable a meaningful review. We note, however, that where appropriate we will not hesitate to strike a brief where facts not of record are essential to the issues being reviewed.

5. This section provides:
  In connection with the consideration of an appeal to the Board from the decision of a referee, the Board may review both the facts and the law pertinent to the issues involved on the basis of the evidence previously submitted, or direct the taking of additional testimony. In any case the Board may limit the parties to oral argument or the filing of a written argument or both.

previously submitted. The Board did not err. Furthermore, this Court, when reviewing matters in its appellate capacity, is bound by the facts certified in the record on appeal. *McKenna v. Pennsylvania State Horse Racing Commission*, 83 Pa.Commonwealth Ct. 116, 476 A.2d 505 (1984).

Claimant relies upon this Court's 1987 decision in *Wilson* and argues that the denial of Claimant's request appears to be the "Commonwealth's long-standing reluctance to approve training for professionals or where the petitioner already has a college degree." (Claimant's brief at 13.) We disagree. In *Wilson,* wherein a petitioner appealed a board's denial of training benefits under the Trade Act, the board had concluded that training benefits are restricted to vocational or on-the-job training and do not include professional training. This Court vacated the board's order, concluding that the board erred as a matter of law in determining that training benefits under Section 236 of the Trade Act were not available for professional training, and remanded the matter to the board. In *Wilson,* the board had preliminarily concluded that training benefits were not available for professional training and did not make a determination of petitioner's eligibility in accordance with Section 236. Based upon the record the Court concluded it could not determine if claimant was eligible for taa benefits and remanded to the board to determine whether "(1) the professional training Petitioner seeks is appropriate and (2) the five conditions set out in Section 2296(a)(1)(A)–(E) have been met." *Wilson,* 106 Pa.Commonwealth Ct. at 313, 526 A.2d at 455. In the matter *sub judice,* a determination of Claimant's eligibility in accordance with Section 236 was made. Accordingly, we affirm the Board's decision on the basis that Claimant did not adequately establish that his employability would be improved by the training requested in accordance with Section 236(a) of the Trade Act.

## ORDER

AND NOW, this 8th day of January, 1990, the order of the Unemployment Compensation Board of Review dated

February 22, 1989, at Decision No. B–272073, is hereby affirmed.