**CAMBRIA COUNTY MENTAL HEALTH/MENTAL RETARDATION, Petitioner,**

v.

**PENNSYLVANIA STATE CIVIL SERVICE COMMISSION (COTTON), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 7, 2000.

Decided June 1, 2000.

Reargument denied Aug. 10, 2000.

Sheryl A. Safina, Ebensburg, for petitioner.

Robert M. Tomaine, Jr., Harrisburg, for respondent.

Robert A. Cohen, Pittsburgh, for intervenor, Jonell X. Cotton.

Before KELLEY, J., FLAHERTY, J., and NARICK, Senior Judge.

FLAHERTY, Judge.

Cambria County Mental Health/Mental Retardation (Appointing Authority) petitions this Court for review of a decision and order of the State Civil Service Commission (Commission) that ordered the Appointing Authority to offer its next available full-time psychological service associate (PSA) position to Jonell Cotton (Cotton) and to reimburse Cotton wages and emoluments from April 30, 1998 until she was appointed to a position by the Appointing Authority. We affirm.

On April 20, 1995, the Appointing Authority submitted a request to the Commission to remove Cotton's name from all PSA eligible lists, both full and part-time, certified to the Appointing Authority. The request for removal of Cotton's name indicated that she had been employed as a part-time PSA by the Appointing Authority from May 9, 1994 to April 25, 1995, but that she had been terminated at the end of her probationary period for failure to meet acceptable performance standards. Cotton was notified by the Commission of the Appointing Authority's request to have her name removed from the eligible list. She filed an appeal to challenge her removal and a hearing was scheduled for November 1995, but it was continued by the Commission until January 30, 1996.

On July 12, 1995, after requesting the removal of Cotton's name from the PSA eligible list, the Appointing Authority requested that the Commission certify a list of eligibles for the position of PSA, giving preference to residents of the Appointing Authority. Certification 06375 was issued as requested. The certification contained two separate groups of eligibles. The first group was composed of five eligibles who were residents of the Appointing Authority. Cotton was the third name listed in this group and she had a final earned rating of 60. The second group was composed of six eligibles who were not residents of the Appointing Authority. J.W. Sutton (Sutton) was the sixth name listed in this group and he had a final earned rating of 60.

On August 22, 1995, the Appointing Authority submitted a copy of Certification 06375 to the Commission indicating which of the eligibles had been appointed to the full-time PSA position. Three of the five eligibles who were residents of the Appointing Authority were appointed. The two residents who were not appointed were Cotton and another candidate. Cotton's name had been marked with the code "PR" and the other candidate's name had been marked with the code "NR". The code "PR" means that an agency has requested that this eligible's name be removed from the list of eligibles.[1] The code "NR" means that the candidate did not reply to an availability survey or did not report for the interview. The Appointing Authority's list also indicated that one non-resident was appointed to the position of PSA and that was Sutton.

In early December of 1995, Cotton's name expired from the PSA eligible list. However, this had no impact on Certification 06375. By letter dated January 22,

---

1. An eligible coded "PR" on a certification list will either be removed or retained on the certification as directed by the Commission. If retained, the appointing agency must consider the eligible. If removed, the appointing agency need not consider the eligible. *See* the amended State Civil Service Management Directive 580.34, effective January 21, 1995.

1996, the Appointing Authority indicated that it wished to withdraw its list removal request action against Cotton. By letter dated January 31, 1996, the Commission granted the Appointing Authority's request to withdraw its action and indicated that the January 30, 1996 hearing had been cancelled. The letter to the Appointing Authority also advised that Cotton's name would remain on the list of eligibles.

In June or July of 1996, the Commission's division of Technical Assistance and Audit contacted the Appointing Authority regarding its appointment of Sutton. It advised the Appointing Authority that corrective action must be taken because an audit of the appointment revealed that improper procedures may have been used in making the appointment from Certification 06375. The impropriety was that the Appointing Authority made an appointment of Sutton who was a non-resident, over Cotton who was a resident. The appointment should have been offered to Cotton. To correct the error the Appointing Authority was advised that it should offer Cotton its next available PSA position. The Appointing Authority responded that the appointments were legal and requested a hearing. A hearing was convened before the Commission under Section 951(d) of the Civil Service Act (Act).[2] After the hearing, an order was entered directing the Appointing Authority to appoint Cotton to the next available PSA position and to reimburse her lost wages and emoluments. It is that order which is now before this Court.

Three issues have been raised for our review: whether a "Statement" filed with this Court by Cotton on January 5, 2000, in lieu of a brief, should be stricken because it violates Pa. R.A.P. 2102 and Pa. R.A.P. 2112; whether the Appointing Authority's amended brief is in violation of the rules and this Court's order of November 8, 1999, ordering the Appointing Authority to strike portions of its Reproduced Record and file an amended brief removing any portion that relied upon the items stricken from the record; and whether the Appointing Authority's appointment in August 1995 of a non-resident, over Cotton a resident of the Appointing Authority, was a violation of the Commission's rule and policies of appointment meriting the Commission to order corrective action.[3] We will address the issues concerning the briefs first.

On January 5, 1999, Respondent/Intervenor Cotton filed with this Court a "Statement of Jonell X. Cotton" in lieu of a brief. The Appointing Authority responded with a motion to strike the statement because it violated Pa. R.A.P. 2102[4] and Pa. R.A.P. 2112[5] and did not in any way reference the Respondent Commission's brief. After the filing of the motion, Respondent/Intervenor Cotton filed a brief with this Court on January 18, 2000. This brief comports with the rules. Since the "Statement" is in violation of the rules, because it does not contain a summary of argument or an argument section as required by Pa. R.A.P. 2112, and because an appropriate brief has been filed stating Cotton's position, the Appointing Authority's motion to strike Cotton's "Statement" is granted.

Next, the Commission argues that the Appointing Authority's amended brief

---

2. Act of August 5, 1941, P.L. 752, *as amended,* 71 P.S. § 741.951(d).

3. Our review of decisions of the Commission are limited to determining whether constitutional rights have been violated, an error of law has been committed or whether the Commission's findings of fact are supported by substantial evidence. *Keim v. Department of Health,* 117 Pa.Cmwlth. 452, 543 A.2d 1261 (1988).

4. Pa. R.A.P. 2102 provides that for purposes of briefing, intervenors shall be subject to the same provisions of the rules applicable to the party on whose side the intervenor is principally aligned.

5. Pa. R.A.P. 2112 requires that the brief of an appellee must contain a summary of argument and an argument section.

is in violation of the rules and an order of this Court dated November 8, 1999. The Commission contends that portions of the Appointing Authority's amended brief continue to rely on documents that this Court has ordered stricken from the record and that these offending portions should also be disregarded by this Court. After review of the Appointing Authority's amended brief, we must agree with the Commission.

On November 8, 1999, this Court ordered that items 5, 8, 9, 10 and 11 of the Appointing Authority's Reproduced Record be stricken because those items were not contained in the Certified Record.[6] In addition, those portions of the Appointing Authority's brief which relied on those items were ordered stricken. The Court then permitted the Appointing Authority to file an amended brief. The amended brief filed by the Appointing Authority is exactly the same as the original brief with the portions relying on the items stricken from the Reproduced Record being crossed out with a pink colored highlighter pen. The offending portions were not actually removed from the amended brief. This Court views the Appointing Authority's actions as a ploy not only to avoid removing the designated portions as this Court ordered, but also to draw our attention to the material in the brief which was ordered to be stricken from the Reproduced Record. The Appointing Authority, nevertheless, insists it has complied with the Court's order by using the pink colored highlighter pen. In addition, the Appointing Authority continued to insist at argument and by post argument correspondence that a highlighter pen is a redaction or deletion. We strongly disagree with this position and advise attorneys against such tactics which do not obey a clear court order and obviously attempt to circumvent it.

In addition to the use of the highlighter pen, a close review of the Appointing Authority's amended brief reveals that it did not even strike with its pink colored highlighter all of those portions which relied on items that were ordered stricken from the Reproduced Record. In the Statement of the Case on page 11 at paragraph 3 of the amended brief, the Appointing Authority used its highlighter on the citation to the record, but failed to use it on the information located in the stricken document. In addition, on page 12 at footnote 1 and on pages 13 and 14 there is information included that does not appear in the Reproduced Record. Additionally, in the Argument section of the amended brief at pages 21, 22 and 23 there are quotations purported to be quotations of the hearing officer, Mr. Zurn. An examination of the Reproduced Record does not reveal that these quotations are anywhere within the Reproduced Record. Again, this Court takes a dim view of the Appointing Authority's attempt to misrepresent the record. Therefore, all offending portions cited above, as well as those highlighted in pink, will not be considered by this Court when examining the merits of the case.

Finally, we address the merits of the case. The Appointing Authority argues that by ordering it to hire Cotton to a PSA position, after the Appointing Authority had fired her for unsatisfactory completion of her probationary period, the Commission is directing the Appointing Authority to act in an absurd manner and that the law abhors an absurd result. The Appointing Authority also alleges that it would not have withdrawn its request to have Cotton's name removed from the eligible list, but for the fact that it had been misled by the Commission.

The Commission argues that there is no evidence that the Appointing Authority was misled into withdrawing it's removal request. In addition, because the request was withdrawn leaving Cotton's name on Certification 06375, but Cotton had not been considered in the August 1995 appointments, the Appointing Authority violated the Commission's policies and rules

---

**6.** This Court, when reviewing matters in its appellate capacity, is bound by the facts certified in the record on appeal. *Tener v. Unem-ployment Compensation Board of Review*, 130 Pa.Cmwlth. 433, 568 A.2d 733, 738 (1990).

regarding appointments. The Commission argues that its decision was within the boundaries of its policies and rules. There appears to be no case law interpreting these policies and rules, and neither the Appointing Authority nor the Commission cite any case law in support of their respective arguments.

When an appointing authority objects to an individual's name being included on a list of eligibles, it can seek the removal by promptly raising it's objection to the Commission. If the objection is sustained by the Commission, the appointing authority need not consider the eligible for appointment. *See* 4 Pa.Code § 97.13. Management Directive 580.34 provides the three-step procedure that must be followed. An appointing authority must: (1) promptly submit a list removal request to the Commission, (2) support its objection at a hearing if the eligible timely appeals the request, and (3) receive notification that the Commission has granted its request to the remove the individual. While the appeal process is proceeding, the eligible's name will remain on the list and will continue to be certified until the Commission issues a decision. Only the Commission can remove an individual from the list of eligibles and until a name has been removed from a list, an appointing authority must consider that individual. *See* Management Directive 580.34.

This Court has held that numbered management directives announcing detailed policies, responsibilities and procedures that are relatively permanent in nature and which have been signed by the head of any commission under the Governor's jurisdiction have the force of law when they are based upon authority or duty conferred by constitution, statute or regulation. *Reneski v. Department of Public Welfare*, 84 Pa.Cmwlth. 226, 479 A.2d 652 (1984). *See also Zerbe v. Unemployment Compensation Board of Review*, 545 Pa. 406, 681 A.2d 740 (1996). The Appointing Authority does not contend that the Management Directive at issue does not have the force of law. Our review of the Act indicates that Section 203

empowers the Commission to adopt rules for making effective the provisions of the Act. 71 P.S. § 741.203. Therefore, according to *Reneski*, Management Directive 580.34 has the force of law. Accordingly, we must examine what affect this Management Directive had on the Appointing Authority's appointment of Sutton over Cotton.

The Appointing Authority argues that it is absurd that an employee recently fired should be rehired. However, the Appointing Authority chose to request and make appointments from a certification giving preference to residents of the County. Having done so, the Appointing Authority was required to follow the rules that govern the use of such certifications. The State Civil Service Commission Manual 580.1, "Certification of Eligibles for the Classified Service" explicitly requires that an appointing authority, in appointing eligibles from a certification giving preference to county residents, must appoint available residents before appointing nonresidents. (R.R. at 32a–33a). Specifically, the Manual provides: "4. Residency. For agencies with Commission approval to give preference to residents of their jurisdiction (e.g. county, city, district, or region), all available eligible residents on the certification must be appointed prior to appointing nonresidents." 580.1 Part G(4). Because 580.1 requires that all residents be hired over nonresidents when the appointing authority requests a county preference list, the Appointing Authority here was required to hire Cotton before hiring a candidate off the nonresident list as long as her name remained on the list of eligibles.

It is clear that the Management Directive sets out three steps an appointing authority must follow in order to remove a name from a list of eligibles. It is also clear from the record that the Appointing Authority did not follow this three step procedure, but instead withdrew its request before steps two and three could be completed, leaving Cotton's name on Certification 06375. According to the Act, regulations and Management Directives, this three step procedure is the only procedure available to remove a name from the

list of eligibles. Because Cotton's name was not removed through this process and remained on Certification 06375, the Appointing Authority had an obligation to consider her for employment when it hired PSAs in June and August. This same result would have occurred if the Appointing Authority had followed through with its removal request and the Commission had denied the removal request. The Appointing Authority would have been obligated to consider Cotton at that time. (R.R. at 23a–25a).

The Appointing Authority argues that it would not have withdrawn its removal request, but for the advice of someone in the office of the Commission. This allegation is not supported by any facts of record. The Appointing Authority attempted to introduce testimony at the hearing that some representative in the Civil Service office had informed an employee of the Appointing Authority that the Appointing Authority should withdraw the removal request. However, this testimony was objected to by the Commission's counsel because it was hearsay and the objection was sustained by the hearing examiner. (R.R. at 75a–76a). We agree with the hearing examiner's ruling because clearly the testimony was hearsay. Therefore, it cannot be the basis for any finding or conclusion that the Appointing Authority was misled into withdrawing its removal request. Without any competent evidence to support its claim that it was misled, it appears that the Appointing Authority unilaterally withdrew its request to remove Cotton's name from the list of eligibles.

The Appointing Authority chose to withdraw its removal request, leaving Cotton's name on the list of eligibles. According to the Commission's rules and regulations, because Cotton was an eligible candidate for the position of PSA and on the list of county residents, she should have been hired over a nonresident. While the Appointing Authority may believe it to be an absurd result, we conclude that the Appointing Authority, not the Commission, caused it. The Commission

did not err as a matter of law in ordering the Appointing Authority to hire Cotton to a PSA position. Rules and procedures are in place for appointing and removing eligible candidates and the Appointing Authority chose not to follow the rules and procedures. It must now correct its improper appointment in accordance with the Commission's rules and regulations. Accordingly, the order of the Commission is affirmed.

### *O R D E R*

AND NOW, this 1st day of June, 2000, Cambria County Mental Health/Mental Retardation's motion to strike Jonell Cotton's "Statement" is granted, the Commission's request that this Court disregard portions of Cambria County Mental Health/Mental Retardation's brief that rely on documents that have been stricken from the reproduced record is granted and the order of the Commission is affirmed.