# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Robert Garrett Jr., | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 735 C.D. 2018 |
| | : | Submitted: September 28, 2018 |
| Unemployment Compensation | : | |
| Board of Review, | : | |
| Respondent | : | |

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
                    HONORABLE PATRICIA A. McCULLOUGH, Judge
                    HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**                         **FILED:  November 15,  2018**


Robert Garrett Jr. (Claimant) petitions, *pro se*, for review of an order of the Unemployment Compensation Board of Review (Board) affirming the determination by a Referee that Claimant was ineligible for unemployment compensation benefits under Section 402(e) of the Unemployment Compensation Law[1] (Law) because he was discharged from his employment with Colonial Electric Supply (Employer) for willful misconduct.  For the reasons that follow, we affirm.

Claimant began working at Employer on March 6, 2017 as a warehouse associate in the receiving department, and his last day of work with Employer was on November 2, 2017.  (Record (R.) Item 10, Referee Decision and Order, Finding

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e). Section 402(e) of the Law provides that an employee shall be ineligible for compensation for any week in which his or her unemployment is due to willful misconduct connected to his or her work. *Id*.

of Fact (F.F.) ¶1.) On November 7, 2017, Claimant filed an initial claim with the Department of Labor and Industry for unemployment compensation benefits; in response, Employer submitted a questionnaire indicating that Claimant was discharged for leaving an inappropriate note on his supervisor's desk. (R. Item 1, Claim Record; R. Item 2, Employer Questionnaire.) The Unemployment Compensation Service Center issued a determination on November 28, 2017 finding that Claimant's actions constituted a willful disregard for Employer's interests and therefore he was ineligible for benefits under Section 402(e) of the Law. (R. Item 4, Notice of Determination.) Claimant appealed and a hearing was held before a Referee on January 22, 2018. At the hearing, Claimant represented himself and testified on his own behalf. Two witnesses, a Human Resources Manager and a Supervisor, testified for Employer. On January 26, 2018, the Referee issued a decision and order determining that Claimant engaged in willful misconduct and was ineligible to receive benefits pursuant to Section 402(e) of the Law. Claimant appealed the Referee's decision to the Board.

On May 1, 2018, the Board issued an opinion and order affirming the Referee's decision and order. The Board adopted the Referee's findings of fact, amending the text of finding 6 and adding finding 15:

> 2. On November 2, 2017, the morning supervisor found a note on his desk when he arrived at work.
>
> 3. The note was addressed to "Jimmy from the devil".
>
> 4. The note contains the drawing and the statement "four eyes b****".
>
> 5. The note also states "F*** you Jim" and depicts a raised middle finger.
>
> 6. The note also read "F*** you, Jim, gay a** [p****".]

2

7. The morning supervisor informed human resources of the note and gave it to them.

8. The supervisor also informed human resources that the claimant called him "the devil".

9. Human resources conducted an investigation into the incident.

10. As part of the investigation, human resources reviewed video surveillance footage which depicted the claimant placing the note on the supervisor's desk on November 1, 2017.

11. Human resources also compared the handwriting on the note with the handwriting provided to human resources when the claimant completed paperwork at the time of hire.

12. The human resource representative saw that the handwriting on the note matched the claimant's handwriting.

13. On November 2, 2017, the employer suspended the claimant pending the outcome of [its] investigation.

14. On November 7, 2017, the employer discharged the claimant for leaving an inappropriate note on a supervisor's desk.

[15.] The employer maintains a policy against harassment. Violation will result in disciplinary actions including possible termination.

(R. Item 13, Board Opinion and Order at 1; R. Item 10, Referee's Decision and Order, F.F. ¶¶2-14.) The Board also adopted the Referee's credibility determinations and resolved the conflict in testimony regarding whether Claimant authored the note or only delivered it in favor of Employer. (R. Item 13, Board Opinion and Order at 1; R. Item 10, Referee's Decision and Order, Reasoning at 2.) The Board further concluded that Claimant's action of placing a note on the desk of

3

a supervisor containing profanities, insults and crude drawings was beneath the standards of behavior that an employer would expect of its employee and that, in any event, Employer had a policy against harassment and Claimant's conduct constituted harassment under the policy. (R. Item 13, Board Opinion and Order at 1.) Claimant petitioned this Court for review of the Board's opinion and order.[2]

On appeal, Claimant argues that Employer did not prove at the hearing that he engaged in willful misconduct that would bar him from receiving unemployment compensation benefits. In unemployment cases, the Board is the ultimate finder of fact and is empowered to resolve all issues of credibility, conflicting evidence and evidentiary weight. *Kelly v. Unemployment Compensation Board of Review*, 172 A.3d 718, 725 (Pa. Cmwlth. 2017). In making credibility determinations, the Board may accept or reject the testimony of any witness in whole or in part. *Doyle v. Unemployment Compensation Board of Review*, 58 A.3d 1288, 1291 n.4 (Pa. Cmwlth. 2013). When the Board's findings of fact are supported by substantial evidence,[3] those findings are conclusive on appeal. *Henderson v. Unemployment Compensation Board of Review*, 77 A.3d 699, 718 (Pa. Cmwlth. 2013); *Bruce v. Unemployment Compensation Board of Review*, 2 A.3d 667, 671 (Pa. Cmwlth. 2010).

Willful misconduct is defined by the courts as (i) an act of wanton or willful disregard of the employer's interest; (ii) a deliberate violation of the employer's rules; (iii) a disregard of standards of behavior which the employer has

---

[2] Our scope of review of the Board's decision is limited to determining whether errors of law were committed, constitutional rights or agency procedures were violated, and necessary findings of fact are supported by substantial evidence. *Henderson v. Unemployment Compensation Board of Review*, 77 A.3d 699, 710 n.4 (Pa. Cmwlth. 2013).

[3] Substantial evidence is defined as the evidence that a reasonable mind might accept as adequate to support a conclusion. *Henderson*, 77 A.3d at 718.

a right to expect of an employee; or (iv) negligence indicating an intentional disregard of the employer's interest or of the employee's duties and obligations to the employer. *Caterpillar, Inc. v. Unemployment Compensation Board of Review*, 703 A.2d 452, 456 (Pa. 1997); *Scott v. Unemployment Compensation Board of Review*, 36 A.3d 643, 647 (Pa. Cmwlth. 2012). The employer bears the burden of proving that the claimant engaged in willful misconduct leading to the discharge. *Caterpillar, Inc.*, 703 A.2d at 456; *Scott*, 36 A.3d at 647. If the employer makes that showing, the burden shifts to the claimant to show good cause for her conduct. *Henderson*, 77 A.3d at 719; *ATM Corporation of America v. Unemployment Compensation Board of Review*, 892 A.2d 859, 865 (Pa. Cmwlth. 2006). Whether a claimant's actions constitute willful misconduct is a question of law that is fully reviewable on appeal. *Caterpillar*, 703 A.2d at 456; *Henderson*, 77 A.3d at 718 n.10.

Employer submitted into evidence portions of its employee manual that prohibit workplace harassment, an acknowledgement form signed by Claimant on March 6, 2017 that he received and understood the employee manual and an acknowledgement form signed by Claimant that he received and understood the harassment policy. (R. Item 2, Service Center Exhibits 7-9.) The employee manual states that workplace harassment can take many forms, including cartoons, pictures and notes and that such conduct could result in "disciplinary action, up to and including termination." (*Id*., Service Center Exhibit 7 at 14, 16, 17.) Employer also submitted a copy of the note, which, as set forth above in the findings of fact, is addressed on the outside to "Jimmy," the Supervisor, "from the devil," and when opened up contains vulgar drawings, obscenities and insults directed towards the Supervisor. (R. Item 2, Service Center Exhibits 5, 6.)

5

The Supervisor testified at the hearing that he discovered the note on his desk when he arrived at work when his shift started at 7:00 a.m. on November 2, 2017. (R. Item 9, Hearing Transcript (H.T.) at 6-7.) The Supervisor testified that when he saw "the devil" written on the note, he knew that the note was from Claimant because Claimant – who worked in a different area of the workplace, worked the evening shift and did not report to the Supervisor – frequently referred to him as "the devil" during their limited interactions at work. (*Id.* at 6-8.) The Supervisor testified that he also recognized the note as being Claimant's handwriting. (*Id.* at 7-8.)

The Human Resources Manager testified that the Supervisor brought her the note but did not report to her that he believed Claimant had written it. (R. Item 9, H.T. at 4, 12.) The Human Resources Manager then reviewed security camera video to determine who left the note on the Supervisor's desk. (*Id.* at 4.) The footage revealed that apart from another supervisor, no one else besides Claimant had been at the Supervisor's desk between the time the Supervisor left work on November 1 and when he arrived on November 2, 2017. (*Id.*) The Human Resources Manager also compared the handwriting on the note to a form that Claimant filled out when he began his employment and determined that the handwriting on the two documents was similar. (*Id.* at 13.) The Human Resources Manager testified that, when she interviewed Claimant on November 2, 2017, he at first denied leaving the note and then admitted that he was near the desk but someone else had left the note. (*Id.* at 4.)

During his testimony, Claimant confirmed that he had at first denied leaving the note to the Human Resources Manager. (R. Item 9, H.T. at 9-10, 14.) Claimant's account of the events at issue at the hearing, however, was that he had

6

placed the note on the Supervisor's desk at the request of a co-worker and that he did not open up the note to see the insults or drawings inside but had only read the outside of the note showing that the note was addressed to the Supervisor and "from the devil." (*Id*.) Claimant testified that he did not know the name of the co-worker, and that the co-worker had told Claimant that he and the Supervisor had been involved in an altercation and there were "funny pictures in there." (*Id*. at 10, 14.) When asked by the Referee why he had agreed to put his job at risk by placing a note on his Supervisor's desk, Claimant testified that he and his team were "a target" at the workplace. (*Id*. at 10.)

We conclude that there was abundant evidence at the hearing to demonstrate that Claimant authored the note. This evidence includes the Human Resource Manager's testimony that the security camera video showed Claimant in the vicinity of the Supervisor's desk during the time the note was left, the testimony from the Human Resources Manager and the Supervisor that the handwriting on the note matched Claimant's handwriting, and Claimant's admission that he left the note on the Supervisor's desk. While Claimant testified that he only delivered the note and did not know its contents, the Board resolved the evidentiary dispute regarding the authorship of the note in favor of Employer. In addition, the fact that Employer did not produce direct evidence that Claimant authored the note does not preclude such a finding. Circumstantial evidence, if substantial, is sufficient to support a conclusion of willful misconduct. *Ruiz v. Unemployment Compensation Board of Review*, 887 A.2d 804, 808 (Pa. Cmwlth. 2005); *Letterkenney Army Depot v. Unemployment Compensation Board of Review*, 648 A.2d 358, 360 (Pa. Cmwlth. 1994).

7

Furthermore, it is clear that this conduct constitutes willful misconduct that barred his receipt of benefits under the Law. Where a violation of a work rule is the basis for dismissal, the employer must show the existence of the policy, that the rule was reasonable and that the claimant was aware of the rule and violated it. *Oyetayo v. Unemployment Compensation Board of Review*, 110 A.3d 1117, 1121 (Pa. Cmwlth. 2015); *Williams v. Unemployment Compensation Board of Review*, 926 A.2d 568, 571 (Pa. Cmwlth. 2007). The employer must further show that the claimant's actions were intentional or deliberate, rather than an inadvertent violation of the work rule. *Grieb v. Unemployment Compensation Board of Review*, 827 A.2d 422, 425-26 (Pa. 2003); *Henderson*, 77 A.3d at 719. Employer demonstrated that it maintained a harassment policy that banned offensive material in written form directed at a co-worker, that Claimant was aware of this policy and that violation of this policy could lead to discharge. We agree with the Board's conclusion that the note's graphic drawings, obscenities and insults directed towards the Supervisor were plainly prohibited by Employer's harassment policy.

In addition, there was substantial evidence to support the Board's conclusion that Claimant's conduct was beneath the standard of behavior that an employer can reasonably expect from its employees. An employer may terminate the employment of a worker in the absence of the violation of an established work rule "where the behavioral standard is obvious and the employee's conduct is so inimical to the employer's best interests that discharge is a natural result." *Umedman v. Unemployment Compensation Board of Review*, 52 A.3d 558, 562 (Pa. Cmwlth. 2012) (quoting *Biggs v. Unemployment Compensation Board of Review,* 443 A.2d 1204, 1206 n.3 (Pa. Cmwlth. 1982)). This Court has held that "[a]n employee's use of abusive, vulgar or offensive language with a superior is a form of insubordination

that can constitute willful misconduct, even if the employer has not adopted a specific work rule prohibiting such language." *Brown v. Unemployment Compensation Board of Review*, 49 A.3d 933, 937 (Pa. Cmwlth. 2012); *see also Leone v. Unemployment Compensation Board of Review*, 885 A.2d 76, 81 (Pa. Cmwlth. 2005) ("An employee's use of abusive, vulgar or offensive language evidences a disregard of standards that an employer can rightfully expect of its employees."); *Allen v. Unemployment Compensation Board of Review*, 638 A.2d 448, 451 (Pa. Cmwlth. 1994). "[V]ulgarity, even in a single instance, can constitute willful misconduct when the vulgarity is unjustified, unprovoked, unnecessary, or uncalled for under the circumstances." *Williams v. Unemployment Compensation Board of Review*, 531 A.2d 88, 89 (Pa. Cmwlth. 1987); *see also Allen*, 638 A.2d at 451; *Dodson v. Unemployment Compensation Board of Review*, 437 A.2d 1080, 1082 (Pa. Cmwlth. 1981).

Claimant further argues that the Referee did not provide him with the opportunity to submit evidence on his behalf at the hearing. In unemployment proceedings, Board regulations provide that "[w]here a party is not represented by counsel the tribunal before whom the hearing is being held should advise him as to his rights, aid him in examining and cross-examining witnesses, and give him every assistance compatible with the impartial discharge of its official duties." 34 Pa. Code § 101.21(a). Pursuant to this regulation, referees are required to reasonably assist a *pro se* claimant in adequately developing the record necessary to render a decision but should not assume the role of the claimant's advocate or provide advice on specific evidentiary issues or points of law. *Vann v. Unemployment Compensation Board of Review*, 494 A.2d 1081, 1085-86 (Pa. 1985); *Hackler v. Unemployment Compensation Board of Review*, 24 A.3d 1112, 1115-16 (Pa. Cmwlth. 2011). Board

9

regulations further provide that "[w]ithin the discretion of the tribunal, the parties shall be permitted to present evidence and testimony which they believe is necessary to establish their rights." 34 Pa. Code § 101.21(b). In addition, due process requires that a party at an administrative hearing be permitted to present evidence on the pertinent issues. *Air-Serv Group, LLC v. Commonwealth*, 18 A.3d 448, 456 n.8 (Pa. Cmwlth. 2011).

Our review of the transcript demonstrates that the Referee conducted a fair and impartial proceeding and discharged her obligations to Claimant under the Board's regulations. At the outset of the hearing, the Referee explained that Claimant had the right to be represented by an attorney or non-legal advisor, to present testimony, documents and other evidence on his behalf and to cross-examine Employer's witnesses. (R. Item 9, H.T. at 2.) The Referee asked Claimant whether he wanted to object to the exhibits submitted at the hearing, asked him whether he understood the format of the hearing, advised Claimant that he could ask questions of Employer's witnesses after their testimony and gave Claimant ample opportunity to explain his account of the events at issue. (*Id.* at 2-3, 5, 7-10, 12-14.)

Claimant attached two text conversations to his petition for review that he argues support his case, one conversation with his girlfriend on November 1, 2017 that Claimant contends shows that he was not working the date he was alleged to have left the note and a second conversation with another supervisor at Employer who states that she had never heard Claimant address the Supervisor who received the note as "the devil." However, no attempt was made to submit these text conversations into evidence nor did Claimant even reference them at the hearing. Therefore, we may not address the text conversations in this opinion. As an appellate court, our review is confined to evidence contained in the certified record, and any

10

evidence not submitted to the Referee will not be considered. *Tener v. Unemployment Compensation Board of Review*, 568 A.2d 733, 738 (Pa. Cmwlth. 1990); *see also Pugh v. Workers' Compensation Appeal Board (Transpersonnel, Inc.)* 858 A.2d 641, 645 n.7 (Pa. Cmwlth. 2004).

The order of the Board is affirmed.

_____
JAMES GARDNER COLINS, Senior Judge

11

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Robert Garrett Jr., :
Petitioner :
:
v. : No. 735 C.D. 2018
:
Unemployment Compensation :
Board of Review, :
Respondent :

## **O R D E R**


AND NOW, this 15th day of November, 2018, the order of the Unemployment Compensation Board of Review in the above-captioned case is AFFIRMED.


_____
JAMES GARDNER COLINS, Senior Judge